Bertram Harnett, J.
Petitioner Summers, a recipient of public assistance with six dependent children, has instituted this proceeding pursuant to article 78 of the CPLB, on her own behalf and as a class action on behalf of all other similarly situated, to compel respondent Nassau County Commissioner of Social Services Barbaro (County) and respondent New York State Commissioner of Social Services Wyman (State) to withhold from her monthly assistance grant sufficient funds to pay her Long Island Lighting Company utility bills.
Mrs. Summers claims, and it is undisputed, that before July 1, 1969, because of her previously demonstrated inability to handle cash, portions of her monthly assistance grant were withheld from her by the County and payments toward her gas and electric bills were paid directly to Long Island Lighting Company (LILCO). On July 1, 1969, the effective date of chapter 184 of the Laws of 1969, the County terminated this practice, known as ‘ ‘ withhold ’ ’, maintaining a position that the policy enunciated by the new statute required a ‘ ‘ flat grant ’ ’ of assistance directly to the public assistance recipient leaving no longer any legal justification for ‘ ‘ withhold ’ ’.
Between the period July 1, 1969 to May 22, 1970, Mrs. Summers fell $316.60 in arrears in her utility payments. In addition, she was informed by LILCO that during the previous period for which she had been on ‘1 withhold ’ ’, the County had paid part of her bills, but had failed to pay $300 of her utility bills, so that her total arrears were $616.60.
On May 9,9,} 1970, Mrs. Summers’ utility service was_termir_ na.ted bv TJLCO for failure to pay. Through the intervention of her attorney, service was restored so that she could again seek 1 ‘ withiiolcT ’ r status. '‘X)mJ\Iay-2f^lih70^Hie^was_notified by the County that ‘ ‘ withhold ’ ’jstatus would not be granted, and TJLCO onen-agnm prepared to terminate her service. This litigation was then instituted by order to show cause, which included a temporary restraining order requiring LILCO to maintain service until determination of the proceeding by the court.
*70 Mrs. Summers seeks a determination that the refusal of the Social Service Commissioners to grant “withhold” status to recipients with demonstrated inability to handle cash violates applicable statutes and regulations. She also seeks a declaration that LILCO’s practice of refusing to give utility service to persons who are in arrears in payments of previous bills is unconstitutional discrimination against poor persons who are unable to pay arrears from their public assistance payments. In response to the petition, the State declares that nothing warrants its being joined as a party. Both County and State also assert that Mrs. Summers has failed to exhaust her administrative remedies and that this proceeding may not be maintained as a class action. County asserts in addition that this proceeding is time barred, that section 131-a of the Social Services Law prohibits “withhold” status, and that petitioner may not receive payment of her arrears as an emergency payment because she has created the situation by her own diversion of funds. LILCO, for its part, denies that its practices are discriminatory and argues that the proceeding is improperly instituted as a class action. LILCO has also asserted a counterclaim against Mrs. Summers for arrears of $384.87 during the period June 20,1969 to June 22,1970, and has cross-claimed against respondent Barbaro for $301.93 allegedly due for the period prior to June 20, 1969, during which the County had guaranteed payment of Mrs. Summers’ utility bills.
The initial question is whether this proceeding is properly instituted as a class action. Such actions are permitted: ‘1 where the question is one of a common or general interest of many persons or where the persons who might be made parties are very numerous and it may be impracticable to bring them all before the court.” (CPLB, 1005, subd. [a].) Traditional articulations of class action learning paraphrase the different notion that separate wrongs to separate persons, even though committed pursuant to a single plan, are not alone sufficient to create a common or general interest (Gaynor v. Rockefeller, 15 N Y 2d 120; see Society Milion Athena v. National Bank of Greece, 281 N. Y. 282; Brenner v. Title Guar. & Trust Co., 276 N. Y. 230) and that class members must “ possess a substantive unity of interest ” (Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 1005.01). But, are such verbal characterizations helpful! Are they capable of specific application!
The court believes that the matter has been best stated in the Weinstein-Korn-Miller text at paragraph 1005.05: “ No precise legal concepts furnish certain guides to when a particular class action should be allowed. A sound approach requires a balance *71 of the advantages and disadvantages in the individual case to the parties, members of the class who are not parties, the courts and-lhe public
~<^Class actions are to be approached warily since by nature thej^deprive nonappearing parties, bound by the plaintiff position, of their separate personal day in court, as well as their choice of remedy.
For a class action so-called to be successfully maintained, there must be a recognizable class beyond the general strains which can be conceived to create a class of any superficially resembling parties.
Cognitive of theSe thoughts, the court strikes its balance and finds that no class action lies here. The group sought to be classified are those public assistance Recipients formerly on ‘ ‘ withhold ’ ’ because of previously handlWTTash ah some past point! representative action since there may be those within it who disputeAhe categoFizatioii, and those who eml ea ir This seemsTa weak class for
this-controversy involves inability to handle cash now, Mid nut in the bast, there may well be changed circumstances for some erstwhile class members. In addition, the choice of remedy need not be uniform. Some may seekwitEFold, but some may contest it and attempt relief under other public assistance procedures or provisions, such as emergency, amount of allowance, inclusion with shelter, or others. The case therefore proceeds on behalf of the petitioner in her personal capacity, for whatever precedential value adheres to a decision of the New York State Supreme Court.
The County asserts that this proceeding is time barred since it was instituted more than four months after its July, 1969 determination that ‘1 withhold ’5 status had lost legal sanction. (CPLR 217.) The County alleges that petitioner knew of the decision to terminate “ withhold ” status in July, 1969 and that she was guilty of laches in failing to make her demand to be restored to “withhold” seasonably. (See Matter of Peruzzin v. Test, 282 App. Div. 550.) The court does not accept this defense because it was clear in July, 1969 that such a demand would be fruitless and because the need for the demand did not arise until May, 1970 when LILCO threatened termination of services. The demand was then timely made and this proceeding was commenced within the next four months.
Neither does the court accept the argument that petitioner must always exhaust her administrative remedies before resort to litigation. As stated by the Appellate Division, Second *72 Department: “ it would have been futile for her to request such a hearing, as the emergency situation would have passed and grave harm could have resulted to her and her children long before any decision would have been rendered through the fair hearing procedures (Matter of Borders v. Nassau County Dept. of Social Services, 34 A D 2d 805.)
With procedural questions settled, the merits of the proceeding may now be determined.
Subdivision 1 of section 131-a of the Social Services Law, effective July 1, 1969, provides that payments of public assistance shall be made: “ in monthly or semi-monthly allowances or grants in accordance with standards established by the regulations of the [State] department, but not in excess of the schedules included in this section * * *. Such schedules shall be * * * exclusive ox shelter and fuel for heating ”.
In the more than one year which has elapsed since the effective date of that statute, the State has promulgated numerous amendments to its regulations, but has left unchanged the provisions of 18 NYCRR 381.2 (a). That regulation provides that: ‘ ‘ when the inability of an applicant or recipient to handle cash has been demonstrated * * * payment of all or part of the grant shall be made by indirect assistance or restricted cash grants ”. The regulations also provide that this system, known as “withhold”, is intended to insure payments to meet a threatened shut-off of utility services. (18 NYCRR 381.2 [b].)
No inconsistency exists between the statutory mandate and the cited regulations. It Is plain to this court that the Countv does have a.vai 1 Rhha-laJi J;be legal authority to withhold and its protestations to the_contrarv a.re baseless. Despite the enactment of the statute effective_July 1, 1969, the utiIitv~allowahce provided by the County may still be withheld before payment of the monthly grant to the recipient. The State seems to agree, for in Matter of Sansome, .iecided November 25.1969. an appeal from, a determination_pf the Countv. the State Commissioner ruledJhat: “ There As no rule or regulation under which the [Department] is permitted to continue restricted _utilitles.._payments unless the,r-eaipimtJs unable toJiandle cash ”. (Emphasis supplied.)
It may be argued that although the County has the power to withhold, no rule of law requires it to withhold, and that accordingly the matter is purely one of administrative discretion. But that point is not reached here because the administrative regulation (18 NYCRR 381.2 [a]) is mandatory that withhold shall follow demonstrated inability to handle cash. The State’s own *73 regulation says “shall” not “may”. In view of this, the County’s prior practice and the sense of this situation, the County will be directed to resume withhold of utility payments for the account of the petitioner.
The back utility allowances which should have been withheld, but which were not, shall be paid to LILCO by the County as emergency payments. The County argues that State regulations do not permit payment for an emergency created by diversion of a previous grant. (18 NYCRR 372.2 [e].) While it is true that the monthly allowances paid to petitioner since July 1, 1969 have included allowance for utility services, it is equally true that petitioner has not paid her utility bills. From the material presented, the court must find the County was possessed of full knowledge that Mrs. Summers was unable to handle her own money, and by insisting that she pay her own utility bills, is co-equally responsible for the current situation of delinquency. In an overriding sense, there is no duplication, since the failure to marshal her cash assets properly is assumedly beyond Mrs. Summers’ capability, creating an intervening circumstance like loss, theft, or catastrophic destruction of money or property previously granted. (Matter of Borders v. Nassau County Dept. of Social Services, supra; 18 NYCRR 372.4 [a].) In such an emergency, Federal aid appears available under section 233.120 of title 45 of the Code to Federal Regulations to reimburse the County at least in requisite part.
In the final analysis, the County must reckon with the reality that its public assistance obligation will not permit a mother and six children to be in a darkened shelter without cooking facilities, electric current and possibly heat. It must face the reality of a recipient’s inability to handle the cash for indispenable utilities. The County must make provision by suitable standards for these essential services. Whether deemed shelter lack or emergency condition, the condition of their deprival must be prevented. It is precisely in such recognition that the withhold procedure was created and remains available. The County’s administrative elections are at its own risk. \
Since it does not appear from any of the papers submitted in this proceeding that the State has been called on to act, or has refused to perform any act directed by law, or that it has otherwise acted illegally with respect to this petitioner, the petition against the State must be dismissed. /
There are no grounds for finding LILCO guilty of discrináinatory practice under section 65 of the Public Service Law simply because it terminates service for nonpayment. Indeed, *74 if anything, adherence to petitioner’s implied argument that public, assistance recipients cannot lose service for nonpayment, while all others can, is actually a manifestation of preference or advantage which the statute prohibits.
More to the point is the petitioner’s argument,that__since service for nonpayment is State action ffepjdving--poor. people of equal protection of the laws under the Fourteenth Amendment to the TTrnied States "Constitution. Whfie-LILCO is a private stock corporation, it obviously enjoys a publicmonopoly andexists ~onIywitEmYEe^r áméwórFbfñiHiSY^ilatibüI^Yhe Public Service Commission. In appropriate cases it would doubtless be held to constitutional guarantees affecting State action......(See Kadlec v. Illinois Bell Tel. Co., 407 F. 2d ; Seidenberg v. McSorley’s Old Ale House, 308 F. Supp. 1253.) However, in this case, the obligation to furnish and conversely the right to receive, utility services is in issue, and the State does furnish utility service to its poor via public assistance. Since the publicly assisted poor receive utility allowances as part of their receipts, it cannot be argued they are deprived of service on grounds of poverty status. The record contains insufficient evidence on which to characterize any legally offensive inadequacy of utility service provisions.
Finally, there is a distinction in the petitioner’s case as to utility charges incurred in amounts within the public assistance allowance, and those incurred in excess of it. This distinction is important because the County is responsible for public assistance only according to a lawfully determined standard. It does not afford an open end to expenditures. ‘ ‘ There is no question that * * * each State is free to set its own standard of need and to determine the level of benefits ’ ’. (King v. Smith, 392 U. S. 309, 318-319, see, also, Rosado v. Wyman, 397 U. S. 397, 413; Shapiro v. Thompson, 394 U. S. 618, 633.) Accordingly, petitioner cannot run up just any kind of utility bill and expect full public reimbursement.
LILCO has counterclaimed in this proceeding against Mrs. Summers for $384.87 in arrears for the period June 20, 1969 to June 22, 1970. A counterclaim is now specifically authorized in an article 78 proceeding. (See Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 7804, subd. [d.].) It is elementary that there must be a reply to a counterclaim denominated as such, CPLR 3011, and that where a responsive pleading is required, all statements of a pleading which are not denied are deemed admitted. (CPLR 3018, subd. [a].) Since *75 petitioner has not served any answer and the time in which to' do so has expired, LILCO is entitled to judgment by default for, the amount demanded in the counterclaim,
In contrast, LILCO’s cross claim against the County for allegedly assuming liability and inducing payment is not specifically authorized in an article 78 proceeding and may be made only by permission of the court. (CPLE- 7804, subd. [d].) In the interests of a prompt resolution of all the issues raised in the pleadings in connection with this matter, the court will permit the cross claim to be interposed. However, in view of the absence of an answer from the County, apparently because the pleading had not yet been authorized by the court, the court will afford an opportunity to that respondent to answer the allegations of the cross claim. Accordingly, the cross claim will be severed and the County may serve its answer within 20 days after service upon the County Attorney of a copy of the judgment herein, with notice of entry.
In summary and supplementation, the court will issue these directives:
(1) The County will resume the “withhold” procedure for petitioner’s utility allowances.
(2) The County will pay LILCO all back utility charges to date of entry of judgment in this proceeding to the extent that the County should have withheld under existing allowances but failed to do so.
(3) Petitioner shall pay to LILCO all back utility charges, in excess of the public assistance allowances, provided, however, that if the County is held liable and pays under LILCO’s cross complaint, petitioner shall repay the County instead of LILCO. Petitioner is further directed to keep her future charges within the limits of public assistance allowances for her so long as she is a public assistance recipient.
(4) Within two weeks after entry of judgment, petitioner shall agree with LILCO on a total and a schedule of repayment of back charges. If no such agreement is made, those parties will return to this court for further direction.
(5) So long as there is no default in the agreed or directed repayment schedule and the County payments, LILCO is stayed from terminating petitioner’s utility services. If petitioner incurs future charges in excess of the public assistance allowance and fails to pay such excess charges, LILCO shall not be stayed by virtue of this decision in terminating services.