Bernard S. Meter, J.
This article 78 proceeding raises the questions whether (1) the County Commissioner of Social Services has discretion as a matter of policy and without regard to the facts of the particular case to refuse a special grant to an aid to dependent children recipient who claims that she and the children are destitute because cash has been stolen from her and (2) whether the proceeding can be maintained as a class action. The court holds the answer to the first question to be negative and the answer to the second question to be affirmative.
The petition alleges that petitioner is the mother of four children, that" she receives public assistance in the category of Aid to Dependent Children, that on July 31, 1971 she received a check issued by the Department of Social Services in the amount of $398 which she cashed at the A & P where she spent $3, putting the remaining $395 in an envelope in her pocketbook, that she went to the laundromat and then back to the A & P and when she sought to pay for the purchases then made could not find the envelope or the money, that she reported her loss to the Department of Social Services and the police, that she was told by the department that nothing could be done, that its failure to act on petitioner’s request results from its policy of refusing to give emergency aid or to duplicate stolen checks, *691 that without the issuance of a duplicate grant of $395, petitioner and her children face exhaustion of their food supply and eviction from their rented home.
CPLR 7804 (subd. [e]) directs that “ The body or officer shall file with the answer a certified transcript of the record of the proceedings under consideration, unless such a transcript has already been filed with the clerk of the court. The respondent shall also serve and submit with the answer affidavits or other Avritten proof showing such evidentiary facts as shall entitle him to a trial of any issue of fact. ’ ’ Despite those explicit and mandatory provisions and despite the fact that article 78 procedure ‘ ‘ is exactly analogous to summary judgment ’ ’ (Matter of Teperman v. Atcos Baths, 7 A D 2d 854; see Matter of Rotkiewicz v. Department of Mental Hygiene, 283 App. Div. 458, 461, affd. 307 N. Y. 847), respondent has contented himself with serving an answer denying some allegations, denying others on information and belief, and raising four affirmative defenses, but has filed neither transcript nor answering affidavit.
Though the petition raises the broader question whether there was in fact a loss or theft, it is eAddent from petitioner’s brief and particularly from the arguments advanced in relation to the class action issue, that the question which petitioner seeks to have determined is the narrower one stated at the beginning of this decision: whether respondent has discretion as. a matter of policy and without regard to the facts to refuse a special grant. Respondent has denied the somewhat unartful allegation of that policy contained in paragraph 17 of the petition, 'but paragraph 7 of the answer supplies any omission in that regard for it expressly avers that ‘ ‘ the refusal to pay by this Department is pursuant to a general policy in effect since 1969, which is uniformly applied to the entire public assistance caseload.”
Limitation by petitioner’s brief to the narrower question has important bearing on whether the proceeding may be maintained as a class action. So limited, the issue becomes not whether respondent has determined on substantial evidence that petitioner and her children are not destitute or that no loss or theft occurred, but whether respondent’s refusal as a matter of policy to consider the facts is impermissible under governing statutes and regulations. While the first would be a situation in which the wrongs asserted are individual to the different persons involved and thus not properly the subject of a class action (Gaynor v. Rockefeller, 15 N Y 2d 120; Summers v. Wyman, 64 Misc 2d 67, affd. 36 A D 2d 795), the second Avould be a breach of duty which adversely affects in the same way the interest of every grant recipient whose cash has been lost or *692 stolen ‘ ‘ and, being a wrong done to all, it should be susceptible of correction by legal action taken for the benefit of all ’ ’, Lichtyger v. Franchard Corp (18 N Y 2d 528, 537). Furthermore, a judgment in favor of all members of the class (persons denied a special grant by reason of respondent’s policy refusal to consider their requests on the facts) “ could not, of course, prejudice the interests of any members of the class ” (Lichtyger v. Franchard Corp., supra, p. 528, n. 2). While it is true, as respondent’s brief notes, that Hall v. Coburn Corp. of Amer. (26 N Y 2d 396, 402) emphasized “ the closely associated relationships growing out of trust, partnership or joint venture, and ownership of corporate stock ’ ’ that have existed in class actions sanctioned by the Court of Appeals, it is also true that CPLB 1005 (subd. [a]) is not limited to those situations alone and that the question whether respondent’s flat policy determination is permissible ‘ ‘ is one of common or general interest of many persons ” (i.e. those who have been, or may hereafter be, denied a special grant without regard to the facts).
The strongest arguments against sanctioning a class action in this case are (1) that article 78 proceedings are intended to be summary in nature and should not, therefore, be encumbered with the additional policy considerations which the classification device involves, and (2) that in light of the doctrine of stare decisis no benefit will be derived from a class action judgment in this case. There may be article 78 proceedings in which, because of the urgency of the situation at hand and the difficulty of fairly protecting the interest of nonparty members of the class, a. court may as a matter of discretion reject class treatment of the proceeding. Clearly, however, nothing in the CPLR precludes bringing such a proceeding as a class action. Indeed, CPLR 7804 (subd. [a]), 7802 (subd. [d]) and 103 (subd. [b]) when read together with CPLR 1005, mandate the contrary conclusion.
While “ stare decisis furnishes almost the same advantages as a class action” (Weinstein, Bevision of Procedure: Some Problems in Class Actions, 9 Buffalo L. Rev. 433, 446), there is an important difference: “ the stare decisis doctrine is an elastic one allowing the litigant to challenge the soundness of an outstanding decision whereas, under the doctrine of res judicata, the decision is binding even though it is plainly wrong ” (People ex rel. Watchtower Bible Soc. v. Haring, 286 App. Div. 676, 683). It is precisely this difference which impels petitioner’s having brought this proceeding as a class action. Petitioner’s supporting affidavit and brief state that the problem is a con- *693 tinning one and that respondent continues to litigate the issue despite decisions adverse to his policy. Respondent has not controverted those statements. A class determination will, unless reversed on appeal, bind respondent as to' all members of the class and thus avoid multiple litigation of the issue common to all members of, the class (see Harris v. Wyman, 60 Misc 2d 1076). The fourth affirmative defense is, therefore, dismissed.
The first affirmative defense, which pleads petitioner’s failure to exhaust her administrative remedies, fares no better. The petition and affidavits set forth that as a result of the loss of the $395 petitioner and her four young children lived on four boxes of grits and some butter from August 1 to August 15, that they received some canned goods and milk from the Long Island Council of Churches on August 16 which by September 1 were exhausted, that she managed to pay the August rent only by borrowing $140 and using the August 15 welfare check for rent, but had to repay the $140 loan, and therefore cannot meet the September rent and feed her family. Respondent offers nothing to contravene these allegations except a conclusory statement in his brief. Goldberg v. Kelly (397 U. S. 254, 264); Kaplan v. Nassau County Dept. of Social Serv. (34 A D 2d 575); Matter of Borders v. Nassau County Dept. of Social Serv. (34 A D 2d 805); Summers v. Wyman (64 Misc 2d 67, affd. 36 A D 2d 795, supra); Matter of Preston v. Barbaro (61 Misc 2d 327, affd. 34 A D 2d 809); Matter of Boss v. Barbaro (61 Misc 2d 147); Matter of Wildstein v. Barbaro (61 Misc 2d 31) all are authority for the proposition that under the circumstances of this case petitioner was not bound to exhaust her administrative remedies by seeking a fair hearing. Matter of Yakkey v. Shuart (65 Misc 2d 859), cited by respondent, while expressing some doubt concerning the scope of the Borders holding, is not to the contrary for the ultimate determination made in the Yakkey case (p. 865) was that “ respondent shall make immediate duplicate payment of the unpaid rental * * ® so as to prevent the eviction of petitioner ’ ’. True, in Yakkey the court directed a further administrative determination but the point is that it took jurisdiction, notwithstanding petitioner’s failure to exhaust her administrative remedies, because of the emergency circumstaiices presented.
The second and third affirmative defenses plead the departí-, mental policy and 18 NYCRR 372.2(e) as bars to the proceeding, and allege that the flat grant system established by chapter 184 of the Laws of 1969 made no provision for the duplication of lost or stolen funds and that 18 NYCRR 352.2(c) does not man *694 date duplicate payment.[1] These defenses thus raise the questions presented to a three-Judge Federal court in Sanchez v. Wyman (318 F. Supp. 827), and petitioner argues that: “ The implication is clear from Sanches [which has retained jurisdiction over the matter] that if state courts found that § 372.2(e) somehow did require social services districts to refuse emergency assistance to destitute families victimized by cash thefts or losses, then a substantial conflict of New York and federal law would result, possibly necessitating federal injunctive relief by way of mandatory injunction or cut off of federal aid” (bracketed matter and underscoring in the original). While, as already noted, this court concludes that section 372.2(e) does not have such an effect, it rejects the argument both as a strained reading of the Sanches opinion and a disservice to Federal and State courts and relations between them. The essence of the opinion will be found in its first and penultimate sentences, which are (p. 828): ‘ ‘ The issues before the Court present a classic case for abstention. * * * It is for the state courts, in the first instance, to pass on the program which the New York Department of Social Services has formulated as the best means of disbursing its large but finite funds. ’ ’ Federal court abstention is a mark of respect for the position of State courts in our Federal-State system, not a Sword of Damocles to be held over the head of the State Judge to whom the issue at hand is then presented, and any argument in the latter vein is wholly improper.
Turning now to the merits of the proceeding, the court notes first that respondent’s reliance upon chapter 184 of the Laws of 1969 was rejected by the Appellate Division in Matter of Borders v. Nassau County Department of Social Serv. (34 A D 2d 805). Moreover, since the Borders decision the flat grant system established by chapter 184 has been revised by the Legislature as a result of the Supreme Court’s decision in Rosado v. Wyman (397 U. S. 397). Rosado made clear that while a State may use its own funds in any way it chooses providing it violates no provision of the Constitution, it is a Federal question whether a State program for expenditure of Federal moneys conforms to the requirements of the Social Security Act. *695 Reacting to that decision, the New York Legislature amended both the flat grant provisions of section 131-a of the Social Services Law and the declaration of standards in section 131 of the Social Services Law, the latter by the affirmative direction, in subdivision 3, that 1 ‘ The department shall determine and establish the standards of need for determining eligibility of persons for public assistance pursuant to the provisions of this chapter and applicable federal requirements ” (emphasis supplied) and in section 1 of chapter 517 of the Laws of 1970 set forth the following legislative findings: ‘ ‘ The United States supreme court case of Rosado v. Wyman, decided April sixth, nineteen hundred seventy, requires that the state reevaluate its standard of need for one of the state’s programs for public assistance in order to comply with a specific provision of the social security act so that the state and its social services districts may continue to qualify for and receive hundreds of millions of dollars annually in federal aid for the benefit of both the needy and the taxpayers of the state.
“ The legislature hereby declares its intent to make provision for the state to meet all necessary federal requirements under the social security act and therefore revises appropriate sections of the social services law by this act to carry out such intent.
“It is the intent of the legislature that the department of social services shall determine and establish the standards of need for public assistance in this state in conformity with federal requirements and shall make provision for payments to and on behalf of eligible needy persons in accordance with schedules and other requirements established and determined by the legislature.”
It is, thus, clear that New York’s Legislature has opted to conform to the Federal system. The validity and interpretation of any rule of the State Board of Social Welfare, regulation of the Department of Social Services or policy of the County Commissioner of Social Services is, therefore, governed by the Constitution of the United States, the Social Security Act and regulations of the United States Department of Health, Education and Welfare adopted under that act, the New York State Constitution and the Social Services Law. Moreover, as this court was at pains to point out in Matter of Preston v. Barbaro (61 Misc 2d 327, affd. 34 A D 2d 809) section 1 of article XVII of the State Constitution empowers the Legislature to direct that subdivisions of the State rather than the State itself provide the ‘ ‘ aid, care and support of the needy ’ ’ to which that section refers, and it is, therefore, immaterial in determining whether *696 the county Board of Supervisors has met the duty imposed upon it by the Social Services Law, that subdivision 8 of section 153 of the Social Services Law proscribes State reimbursement to the county ‘ ‘ for any expenditure made for the duplication of any grant and allowance for any period ”. Indeed the State Department of Social Services has expressly so recognized in 18 NYCRR 352.2(c) quoted above, which authorizes the making of a duplicate grant ‘ ‘ because the cash has been lost or stolen ’ ’ but states that such duplicate allowance is not reimbursable by the State. In summary, respondent’s policies must conform to Federal standards even though it be wholly county funds that are expended, because the Legislature has authority under the State Constitution to mandate such expenditures upon the county and has declared that eligibility for public assistance must conform to applicable Federal requirements.
Viewed in this context, neither respondent’s stated policy nor the State’s effort to define the “ emergency assistance ” provided for in section 350-j of the .Social Services Law so as to exclude “destitution * * * due to loss, theft or diversion of a grant already made ” can be sustained. The facts that loss or theft is not a catastrophe within the meaning of subdivision 6 of section 131-a of the Social Services Law (Matter of Howard v. Wyman, 28 N Y 2d 434), and that section 131-a makes no provision for duplicating lost or stolen grants are not determinative, for as footnote 3 to the Howard decision recognized, and as been held in Matter of Nazario v. New York City Comr. of Social Serv. (37 A D 2d 630) and Matter of Bates v. Wyman (36 A D 2d 854) eligibility for ‘ ‘ emergency assistance ’ ’ under section 350-j of the Social Services Law is a question unrelated to eligibility under section 131-a. What is determinative is the language of section 350-j and of the ‘ ‘ applicable federal requirements ’ ’, viz: subdivision (e) of section 406 of the Social Security Act of 1935, as amended, subdivision (e) of section 606 of title 42 of the United States Code and section 233.120 of title 45 of the Code of Federal Regulations.
Section 350-j provides in pertinent part as follows: “ 1. Any inconsistent provisions of this chapter or of any other law notwithstanding,[2] so long as federal aid is available therefor, a social services district shall provide emergency assistance as herein defined to persons eligible, including migrant workers with families.
*697 ‘ ‘ 2. The term ‘ emergency assistance ’ means aid, care and services furnished for a period not in excess of thirty days in any twelve month period, in the case of a needy child under the age of twenty-one who is living with a person related to him by blood, marriage or adoption who is eligible to receive aid to dependent children on his behalf pursuant to provisions of this chapter and the rules of the board and regulations of the department.
“3. Emergency assistance to needy families with children shall be provided in accordance with the rules of the board and regulations of the department for children who are without available resources, and when such assistance is necessary to avoid destitution or to provide them with living arrangements in a home, and such destitution or such need did not arise because such children or relatives refused without good cause to accept employment or training for employment.
Clear from subdivision 1 is it that emergency assistance must be provided by the county, which under subdivision 7 of section 2 and subdivision 3 of section 61 of the Social Services Law is a social services district, “ so long as federal aid is available therefor ”. Respondent’s brief states that “ Federal aid is not available to the County for a duplication of welfare payments, which have been lost or stolen ”, but cites no statute, regulation or decision in support of that statement. Perusal of the Federal statute and regulation cited above discloses no such limitation, the conditions for availability of Federal aid stated by them being simply: (1) a child under 21 years of age, (2) living with a specified relative in a residence maintained as the relative’s home, (3) the child being without resources immediately accessible to his needs, (4) the assistance being necessary to avoid destitution of the child or provide living arrangements for him in a home, and (5) the child’s destitution or need for living arrangements not having arisen from his or his relative’s refusal to accept employment or training for employment. Federal aid being available “ so long as ” those conditions are met, and those conditions being capable of being met by payments made to avoid the destitution that would otherwise result from the loss or theft of a monthly grant, subdivision 1 imposes upon the county the duty of making payments which meet the Federal conditions even though the payment duplicates a lost or stolen prior monthly grant or the cash obtained therefrom.
Respondent argues, however, that subdivision 1 requires emergency assistance only “ to persons eligible ”, that subdivision 3, which defines who is eligible, includes the phrase [1] ‘ in accordance with the rules of the board and regulations of the department ” and that by section 372.2(e) of the regulations it *698 accordance with the rules of the board and regulations of the department ” and that by section 372.2(e) of the regulations it is a condition of eligibility that destitution is not “ due to loss, theft or diversion of a grant already made.” In Matter of Lawson v. Shuart (67 Misc 2d 98, 100) Mr. Justice Harnett held that “ Nothing in that statute [§ 350-j, subd. 3] authorizes or implies a departmental regulation limiting the emergency circumstances to certain types of destitution while excluding destitution caused by circumstances of theft” and held the quoted portion of the regulation invalid as “in conflict with the statutory mandate that assistance be provided in all emergency situations to avoid destitution.” Respondent’s contention that that holding overlooks the phrase ‘ ‘ in accordance with the rules of the board and regulations of the department ” does not withstand analysis. In the first place that phrase modifies the word “provided” and is, therefore, concerned with method rather than eligibility, with ‘ ‘ how ’ ’ rather than ‘1 who. ’ ’ In the second place, were the phrase construed to authorize the board or the State Department of Social Services to define eligibility by imposing criteria other than those set forth in the statute itself, it would be unconstitutional since it sets forth no standard or rule by which the board or the Commissioner is to be guided in establishing such additional criteria (Matter of Small v. Moss, 279 N. Y. 288; Darweger v. Staats, 267 N. Y. 290). In the third place, if the absence of a standard be ignored, there would nonetheless be grave question concerning the validity of a regulation excluding destitution ‘ ‘ due to loss, theft or diversion of a grant already made,” both as a matter of equal protection (see Shapiro v. Thompson, 394 U. S. 618; Gaddis v. Wyman, 304 F. Supp. 717, affd. 397 U. S. 49; Rothstein, v. Wyman, 303 F. Supp. 339, revd. on other grounds 398 U. S. 275, and as a matter of inconsistency with applicable Federal requirements, see Rosado v. Wyman, 397 U. S. 397; Lewis v. Martin, 397 U. S. 552; King v. Smith, 392 U. S. 309).
It follows that 18 NYCRR 372.2(e) insofar as it seeks to exclude from eligibility for emergency assistance those whose destitution arises through theft or loss is invalid, and that since section 350-j of the Social Services Law mandates emergency assistance by the county in all destitution cases, respondent’s policy of denying such emergency assistance as a matter of discretion and without reference to the facts is likewise invalid. It is, therefore, unnecessary to consider petitioner’s further argument that section 352.2(c) of the regulations which permits duplication of a lost or stolen grant, is not merely permissive but mandatory. If it be assumed that that provision is simply *699 permissive in cases not involving destitution (see Matter of Borders v. Nassau County Dept. of Social Serv., 34 A D 2d 805, supra; Matter of Steward v. Barbaro, 64 Misc 2d 96) it is nonetheless true that in cases involving destitution respondent must perform the duty enjoined upon him by section 350-j of the Social Services Law and consider such applications for emergency assistance on their facts (cf. Matter of Yakkey v. Shuart, 65 Misc 2d 859, supra).
Though as noted above, respondent has served no answering affidavit, summary judgment simply directing issuance of $395 in emergency assistance should not be granted since the facts concerning the claimed loss or theft are exclusively within petitioner’s knowledge (Marine Midland Trust Co. v. Macaluso, 30 A D 2d 932). Rather than direct a trial of the factual issue which respondent should have determined in the first instance, the court will, following a procedure akin to that suggested in Matter of Yakkey v. Shuart {supra), direct that respondent, within five days after service upon him of a copy of the judgment to be entered hereon, pay to petitioner $395 in emergency assistance subject, however, to respondent’s right to reimburse himself for such payment out of future sums payable to petitioner should it be determined by respondent after consideration of the facts (and be affirmed on fair hearing and on article 78 review if sought by petitioner) that destitution within the meaning of section 350-j of the Social Services Law and 18 NYCRR 372.2 as above limited has not been established. The judgment will also define the class on whose behalf the proceeding has been brought as above set forth and direct that respondent consider each application for emergency assistance predicated on destitution resulting from theft or loss of a grant already made on its facts and abandon his policy of denying such applications without regard to the facts.

. Until July 21, 1971 section 372.2(e) provided as one factor of eligibility for emergency assistance that “Destitution is not due to loss, theft or diversion of a grant already made ”. On July 21, 1971, the section was amended and the corresponding provision became section 372.2(c) (2). The change in form is not deemed material. Section 352.2(c) is a part of the regulation defining allowances and provides: “ A special allowance and grant may be made to duplicate a grant already made because the cash has been lost or stolen; such duplicate allowance and grant is not reimbursable by the State.”

. The opening phrase of subdivision 1 would overrule the prohibition against State reimbursement for a duplicate grant were it not that subdivision 8 of section 153 of the Social Services Law contains a like opening clause and is the later enactment (see McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 98, subd. b and § 394).