Bertram Harnett, J.
Where the Government has undertaken to subsidize child care to encourage employment opportunity for beneficiaries of social service programs, may it do so by use of “ vouchers ” rather than cash payment? We believe it can. -
The Nassau County Department of Social Services, under the supervision of the New York State Department of Social Services, has for many years paid for child care so that the parents of young children can be trained or employed, pursuant to a Federally reimbursed Work Incentive Program (WIN) (U. S. Code, tit. 42, § 602, subd. [a]; Code of Fed. Beg., tit. 45, § 220.35). The county agency, until recently, included the payment for child care expenses directly in the semimonthly grant to the recipient parent who was then in turn responsible for paying the babysitter or day care center.
In February, 1972, Nassau County initiated a new policy, in compliance with a State regulation (18 NYCBB 352.9) under which the child care provider submits periodic “ vouchers ” to the county indicating the services rendered, after which the county remits payment directly to the provider. The regular assistance grant of families receiving child care is reduced accordingly by the amount of the child care allowance that is now sent directly. Three parents currently in the work incentive training programs bring this CPLB article 78 class proceeding to challenge the purchase of services policy which they say results in delayed payments, loss of babysitters who will not accept vouchers, and ultimately in their being forced to drop out of training programs for lack of child care.
In view of the immediate nature of the problem which cannot adequately be remedied by the existing fair hearing procedures, the court finds that petitioners need not exhaust their administrative remedies before seeking judicial relief, and will there *1075 fore consider the merits of this application. (See Matter of Borders v. Nassau County Dept. of Social Services, 34 A D 2d 805.)
The initial question presented is whether voucher payments are, per se, impermissible. Payments for child care are made pursuant to the Federally reimbursed WIN program established by the State social services agency in New York. (U. S. Code, tit. 42, § 602, subd. [a], par. [19]; Code of Fed. Reg., tit. 45, § 220.55, subd. [a], par. [3]; Social Services Law, §§ 131, 350-b; see Young v. Shuart, 67 Misc 2d 689, mod. 39 A D 2d 724.) Federal regulations require that child care payments be carried as a “ service cost rather than an assistance cost ”, and specifically provide that ‘ ‘ the payment may be made either to the vendor of the service directly or to the recipient for payment by him”. (Code of Fed. Reg., tit. 45, § 220.61, subd. [e], par. [11].) In this case, the provider is a “ vendor ” as contemplated under the regulation.
It is true, as petitioners argue, that Federal requirements recognize the “ money payment principle” requiring that the regular assistance grant for basic necessities be issued in cash or by check to the recipient so as to allow recipient families to spend money as they choose and to learn to budget limited funds (HEW, Handbook of Public Assistance Administration, Pt. IV, § 5120; cf. Social Services Law, § 211, subd. 3). Limited 1 ‘ protective ’ ’ payments as to items included in the basic grant are allowed only upon a showing of inability to handle cash. (Code of Fed. Reg., tit. 45, § 234.60; Summers v. Wyman, 64 Misc 2d 67, affd. 36 A D 2d 795; Matter of Burroughs v. Shuart, 69 Misc 2d 396.)
However, Federal law specifically allows both methods of payment for child care, direct payment to the provider and cash payment to the recipient, without any qualifying criteria, restrictions or indications as to which method is to be preferred. While the court can discern no lesser need for observance of the money payment principle for child care payments as for other items of necessity, such as rent or utilities where money is paid, that respondents have restricted child care payments to vouchers does not appear to contravene the applicable Federal law. In this regard, the court notes that the voucher system, as an accounting device to document services rendered, is not confined solely to the social services field; a similar method is used with regard to employees of New York State. (See State Finance Law, § 112.)
Likewise, petitioners’ contention that respondents’ failure to provide families with prior hearings before implementing the *1076 voucher system violates their right to due process of law (Goldberg v. Kelly, 397 U. S. 254; Matter of Diaz v. Wyman, 68 Misc 2d 286) fails because the total amount of assistance provided, including direct payments made on behalf of the family, is not changed. While the cash grant received is reduced by the amount of the child care expense which is now paid directly to the vendor, the recipient still receives the same total benefits each month as before, albeit through a new payment system. A prior hearing is not constitutionally required before implementation of a change in the manner, rather than total amount, of assistance, especially one effected by a State-wide regulation. (See Murphy v. Wyman, 68 Misc 2d 894, 899.)
The crux of petitioners’ contention relates more essentially to the problems in local implementation of the voucher policy. The parents claim that county payments in response to voucher submissions are delayed six weeks and that for this reason, their babysitters are unwilling to accept vouchers. The county has not interposed a verified answer in this proceeding, but has instead submitted an attorney’s affirmation which, without denying the voucher delays at the local level, simply states that the county is following the State regulation. However, nothing in either • State or Federal regulations requires or condones delay in payment once a voucher is received. Whatever this situation, no claim is pursued with respect to the legal effect of late payment. The petitioners challenge the validity, rather than the correct local implementation, of the State regulation requiring voucher payments. (Cf. Murphy v. Wyman, supra.) Indeed the record does not contain enough facts to enable a judgment on the propriety of the county’s actions in the claimed six-week payment delay.
Petitioners have not submitted proof as to how many child care providers will refuse to accept vouchers, although there could be many if, in fact, vouchers are popularly equated with unreasonable delay in payment. As petitioners concede, some child care providers, such as institutional day care centers, accept vouchers, and may even prefer such a method of payment which, though more cumbersome, is at least regular. Accordingly, the voucher requirement is not arbitrary or capricious and petitioners have established no basis for a blanket prohibition of voucher payments for child care. (Cf. Summers v. Wyman, supra; Matter of Pruzan v. Valentine, 282 N. Y. 498; Matter of Howard v. Wyman, 28 N Y 2d 434.)
Petitioners’ application is denied and the petition dismissed.