Daniel G. Albert, J.
This action arises as an aftermath of an extremely severe ice storm which struck Long Island in December, 1973, causing particularly heavy damage and distress to the residents of Nassau and Suffolk Counties. Numerous home owners and businesses were deprived of heat, electricity and power facilities over a period of several days, and many Long Island residents were forced to seek shelter at nearby motels and hotels as the combination of ice forming on the overhead electrical lines of defendant Long Island Lighting Company (hereinafter referred to as LILCO) and the falling of many trees and tree branches on the overhead wires caused extensive disruption to LILCO’s services.
The individually named plaintiffs herein are respectively residents of Nassau and Suffolk Counties, and they bring this action on their own behalf and allegedly on behalf of all other LILCO customers similarly situated to direct defendant LILCO to commence installation of its electrical lines underground, to enjoin defendant from charging plaintiffs for the cost of repairing its overhead lines and to obtain money damages from defendant for personal injuries and property damages allegedly suffered as a result of defendant’s alleged negligence in maintaining its overhead lines.
Defendant LILCO moves to dismiss the complaint pursuant to CPLR 3211 (subd. [a], pars. 1, 2, 3, 7, subd. [c]) upon the ground that plaintiffs lack legal capacity to bring a representative action on behalf of other consumers, that it fails to state a cause of action and' that a defense is founded upon documentary evidence. It is the opinion of this court that the plaintiffs have stated a cause of action for their alleged individual personal injuries and property damages. In all other respects, defendant’s motion to dismiss plaintiffs’ complaint is granted.
The thrust of the first cause of action is to compel LILCO to eliminate its overhead electrical system and to commence installation of its electrical lines underground and to enjoin defendant from charging consumers for repairs to defendant’s overhead lines. Plaintiffs assert that the overhead system is hazardous and that LILCO is negligent in continuing to maintain its overhead system knowing of its latent dangers. Plaintiffs further contend that such matters ‘ ‘ are not too complex to be comprehended by the Court ” for the court to retain jurisdiction.
The general rule governing administrative matters is that “ courts should decline to take initial jurisdiction of a matter within the competence of an administrative agency specially created to handle such matters.” (1 N. Y. Jur., Administrative *402 Law, § 214, pp. 672-673.) The court perceives of pno reason to depart from such standard practice. Subdivision 2 of section 66 of the Public Service Law vests the Public Service Commission with power to: “ examine or investigate the methods employed by such persons, corporations and municipalities in manufacturing, distributing and supplying gas or electricity for light, heat or power and in transmitting the same, and have power to order such reasonable improvements as will best promote the public interest, preserve the public health and protect those using such gas or electricity and those employed in the manufacture and distribution thereof, and have power to order reasonable improvements and extensions of the works, wires, poles, lines, conduits, ducts and other reasonable devices, apparatus and property of gas corporations, electric corporations and municipalities ”. Under this statutory scheme, “ the Public Service Commission is authorized generally to prescribe the terms and conditions under which utilities shall extend their lines, the manner in which costs shall be borne, and the appropriate charges for such service ” (Matter of Sleepy Hollow Lake v. Public Serv. Comm. of State of N. Y., 43 A D 2d 439, 443).
Indeed, the commission has already initiated proceedings to determine the advisability of adopting rules pertaining to under-grounding electric facilities. The very fact that these proceedings have taken over four years to complete rebuts plaintiffs’ contention as to the lack of complexity of the subject matter. The various aspects of overhead conversion to underground necessarily involved considerations peculiarly within the expertise of the commission. The financial considerations alone warrant extensive commission study. The court is extremely reluctant to assert jurisdiction and pre-empt the Public Service Commission in matters which the .commission is especially empowered to resolve. Moreover, the proceedings already commenced by the commission are subject to review by certiorari wherein the entire record can be developed. (See Town of North Hempstead v. Public Serv. Corp. of Long Is., 199 App. Div. 189, 190.) At this stage of the proceedings, I believe it would be most inappropriate for the court to assert jurisdiction.
Kovarsky v. Brooklyn Union Gas Co. (279 N. Y. 304) (cited by plaintiffs) does not dictate a contrary result. There, the Court of Appeals did not relegate plaintiffs to the “ useless procedure ” of making application to the Public Service Commission in an action concerning an illegal charge because only a question of law was involved, i.e., whether an admittedly reasonable rule was applied prejudicially and in a discriminatory *403 manner. The Kovarsky court noted that the usual procedure to be followed is through the commission initially (Kovarsky v. Brooklyn Union Gas Co., supra, pp. 310-311) and the instant case presents no compelling reason to deviate from established practice.
In the second cause of action, plaintiffs seek money damages for themselves and for all others similarly situated who allegedly suffered damages as a result of defendant’s alleged negligence in the sum of $1,000,000,000. This class action is purportedly brought pursuant to CPLR 1005 (subd. [a]) which allows a class action “ where the question is one of a common or general interest of many persons or where the persons who might be made parties are very numerous ”. Though there have been recent indications that the restrictive interpretation accorded to CPLR 1005 may no longer be viable (Moore v. Metropolitan Life Ins. Co., 33 N Y 2d 304, 313; see, also, Hall. v. Coburn Corp. of Amer., 26 N Y 2d 396, 401), the plaintiffs have failed to demonstrate to this court that a more liberal interpretation of CPLR 1005 is warranted in this action.
The alleged class herein is composed of countless customers of defendant, many of whom unquestionably suffered considerable discomfort during those bitter cold days in December without any heat or electricity. As a matter of law, however, separate wrongs to separate persons, even if pursuant to a common plan do not alone create a common or general interest. (Society Milion Athena v. National Bank of Greece, 281 N. Y. 282, 292; Young v. Shuart, 67 Misc 2d 689, 691; Summers v. Wyman, 64 Misc 2d 67, 70, affd. 36 A D 2d 795.) Each aggrieved person is entitled to determine for himself the appropriate remedy that he will seek if he so desires and, as Judge Fuld noted in Gaynor v. Rockefeller (15 N Y 2d 120, 129-130), an alleged class action against the State charging discriminatory practices, ‘ ‘ each individual claim might be subject to defenses not available against others; and, in general, determination of the merits of each claim would turn on the particular facts and circumstances involved. ’ ’ Such a situation prevails in the case at bar as the wrongs asserted are individual to the different persons involved, different remedies are available to each member of the alleged class and varied defenses are available to LILCO on any individual claim asserted.
■ It is this court’s determination that a class action does not lie here. The named plaintiffs’ second cause of action is therefore limited to a claim for damages to which they have allegedly individually been subjected (Gaynor v. Rockefeller, 15 N Y 2d 120, 130, supra).