Bertram Harnett, J.
There is no doubt that the Social Services’ departmental workload of this State is heavy. There is also no doubt that the statutes and regulations governing the administration of social services form part of the law of the land. And, finally, there is no doubt that both social service beneficiaries and social service administrators alike must obey that law.
This litany of familiar observation forms the backdrop of the case at hand. To most, the issue of government acting within a specified time limit on applications for social service benefits is not world-shaking in the scale of society’s problem priorities. But to those intimately affected, it shakes their world. It is the stuff of simply sustaining life at its most elemental aspects, eating, shelter, clothing, some semblance of human dignity. And, too, it raises questions of reciprocal morality. If we find the regulators to be jaundiced to the governing law, can we not -expect the infection to appear amidst those being regulated.
With these thoughts in mind, we turn to the facts before us.
A. The Facts and Positions.
1. The Petitioners.
The petitioning parents in this case applied for and were denied Aid to Families with Dependent Children (AFDC) public *1011 assistance in Nassau County at various times in 1972, and each appealed to the New York State Department of Social Services. Their appeals were heard without delay in “ fair hearings ”, but the State failed to make a decision in each instance well past the 60-day period set by State and Federal regulations. They now bring this article 78 proceeding seeking relief on behalf of themselves and all who have requested, but not received, timely final administrative decisions, as a result of the State’s interpreting the prescribed 60-day time limitation as merely advisory.
2. The State.
The State has not submitted a verified answer stating ‘ pertinent and material facts showing the grounds of [its] action complained of ”, as required by subdivision (d) of CPLB 7804. Instead, it seeks to dismiss this proceeding on mootness grounds by submitting that the named petitioners have now been sent their fair hearing decisions, although over 80 days past the prescribed time limit. (See CPLB 7804, subd. [c].)
The only document submitted by the State, a page and a quarter affirmation by an Assistant Attorney-General, does acknowledge that the decisions were delayed past the 60-day deadline, does not deny the claimed practice of widespread similar delays, but contends that the large recent volume of fair hearings has prevented timely decision-making, and, in any event, the 60-day rule is “ directory rather than mandatory ”.
B. Mootness.
The court must then determine whether, in view of the State’s admission that such administrative delay is going on and is legally justifiable, the controversy presented is moot. The Court of Appeals has held: “ A matter, although settled as between the parties, will not be considered academic when the underlying questions are of general interest, substantial public importance and likely to arise with frequency ”. (Matter of Gold v. Lomenzo, 29 N Y 2d 468, 475-476.)
Where ‘ ‘ the controversy is of a character which is likely to recur not only with respect to the parties before the court but with respect to others as well * * * the differences between the plaintiff and the defendant give rise to a ‘ justiciable controversy ’, for which a declaratory judgment would be an appropriate remedy (see CPLB 3001).” (East Meadow Commnunity Concerts Assn. v. Board of Educ. of Union Free School Dist. No. 3, 18 N Y 2d 129, 135; see, also, Matter of Bell v. Waterfront Comm. of N. Y. Harbor, 20 N Y 2d 54, 61; Matter of Concord Realty Co. v. City of New York, 30 N Y 2d 308, 312-313.)
*1012 The underlying controversy in this case is a recurring legal dispute with substantial public importance. The State itself recognizes the substantial number of decisions rendered past the time allowed, and the court dockets themselves reflect repeated proceedings brought by families seeking to compel the State simply to render a decision after fair hearing. Numerous proceedings have been brought by individual recipients whose fair hearing decisions are long past due, some resulting in court decisions upholding the 60-day requirement and directing the rendering of a decision (see, e.g,, Williams v. Wyman, Index No. 4171/70. Nassau County Sup. Ct., May 27, 1970, Velsor, J.), Others being withdrawn after filing when decisions are finally issued, however late (see, e.g., Mulgrav v. Lavine, Index No. 15604/72; Washingtons. Lavine, Index No. 10062/72; Mickens v. Lavine, Index No. 7003/72 [all Nassau County Sup. Ct.]). Yet, the problem continues. The recurring nature of the dispute, not only as to those named, but also as to others who may request further hearings in the future and again face such delays, is both logically apparent and publicly recorded.
Further, in terms of the public programs which form part of governing law, the importance of timely decisions resolving grievances of essentially marginal families can hardly be questioned. Society, as well as the families receiving assistance, has a substantial interest in speedy review, which is a safeguard against arbitrary local agency determinations and the concomitant resulting human deprivation.
C. Class Action Relief.
The law in New York is now clear that an article 78 proceeding may be treated in substance as an action for a declaratory judgment. (CPLR 103, subd. [c]; Matter of Kovarsky s. Housing & Development Administration of City of N. Y., 31 N Y 2d 184, 192; Young v. Shuart, 67 Misc 2d 689, 692, affd. 39 A D 2d 724.) Whether the declaratory relief avails to more than the particular litigants petitioning is a more substantial issue.
The language of the cla,ss action statute, subdivision (a) of CPLR 1005, fits this case most appropriately. It provides: ‘‘ Where the question is one of a common or general interest of many persons or where the persons who might be made parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all ”
The language of subdivision (a) of CPLR 1005 is necessarily general, and must be interpolated to each case, and a balance of factors, including practicality, ultimately decide whether class *1013 relief is appropriate. The advantages of a single ruling with uniform application must he weighed against the enforcement aspects of a classwide directive.
Despite the theoretical effect of stare decisis, it is apparent that continued individually limited litigation presenting this question, and even resolving it against the State on a per case basis, does not correct the underlying problem. The State can always concede each case is moot when it is ultimately cornered by simply affording the relief. Yet, the intervening time periods are often crucial to the needy applicants. Resolution of such an issue, once and for all, ‘ to avoid a multiplicity of suits ’ ’, is undoubtedly within the purposes of CPLR 1005. (Kovarsky v. Brooklyn Union Gas Co., 279 N. Y. 304; Harris v. Wyman, 60 Misc 2d 1076, 1077.) The delay in fair hearing decisions beyond 60 days because of the State’s policy is “ a wrong done to all [and] should be susceptible of correction by legal action taken for the benefit of all. ’ ’ (Lichtyger v. Franchard Corp., 18 N Y 2d 528, 537.) There is more than “ separate wrongs to separate persons ” here in the context of Hall v. Coburn Gorp. of Amer. (26 N Y 2d 396, 400). The State’s interpretation of the 60-day rule as nonbinding is the single wrong with a single widespread effect: late decisions for many recipients or applicants. If found invalid, it is no more valid a basis for delay in one case than the next.
Only persons whose delayed decisions are occasioned by the State’s policy belong to the class, and would be affected by its invalidation. No apparent interests of recipients are prejudiced by class relief, since the rendering of punctual decisions should harm no class member. Further, no claim is made for adherence to the 60-day rule where the recipient/applicant requests a delay in the fair hearing, in which case, both State and Federal regulations waive the time limit.
It should be further noted that the relief requested does not require that assistance be issued to anyone, but only that the State adhere to its own review procedures.
The court recognizes therefore the true expediency of class relief here, as has been done not infrequently in cases where public assistance recipients challenge uniform adverse policies. (Examples are, Young v. Shuart, 39 AD 2d 724, supra, and Matter of Ross v. Sipprell, 71 Misc 2d 677 [recipients challenging county social services uniform denial of emergency assistance]; Murphy v. Wyman, 68 Misc 2d 894 [State biweekly split rent policy attacked] ; Harris v. Wyman, 60 Misc 2d 1076, supra [State-wide residency requirement invalidated].)
*1014 The pendency of a Federal lawsuit, Nelson v. Sugarman (71 Civ. 1719 [S. D. N. Y.]), concerning general fair hearing procedures, presenting only incidentally the one issue squarely before this court, is not a bar to such relief since there is no exclusive Federal jurisdiction over cases involving State administered, Federally funded, public assistance programs, and indeed, Federal courts encourage the thorough preliminary review and resolution by State courts of State law issues, possibly intertwined with Federal questions, before any superseding Federal mandate issues. (See Zwickler v. Koota, 389 U. S. 241 [1967] ; McNeese v. Board of Educ., 373 U. S. 668.)
In short, the legal process would be unjust and self-defeating . if it declined to resolve a clear, recurring legal issue of substantial import and to remove it from the treadmill of repititious litigation. Class action relief is appropriate, indeed required, in the interests of justice and expedition.
D. “Fair” Hearing Mandates Seasonable Decision.
The “ fair hearing ” is a statutory creature, being established by name in the Federal' Social Security Act (IT. S. Code, tit. 42, § 302, subd. [a], par. [4]; § 602, subd. [a], par. [4]; § 1352, subd. [a], par. [4]), and adopted in section 353 of New York’s Social Services Law. There is no doubt that applicants for public assistance, equally with current recipients, are entitled to an administrative review of a denial of aid. (18 NYCEE 358.4 [a].) In a very real sense, the fair hearing “ right ” entails the full panoply of procedural protections prescribed under State and Federal regulations. Generally, these procedural requirements are construed in a manner so as to insure adequate notice and fairness for the aggrieved applicant or recipient. (See Matter of Ryan v. New York State Dept. Social Servs., 40 A D 2d 867; Matter of Cole v. Wyman, 40 A D 2d 1033.) This is no less true of time limitations on determining submitted grievances. The fairest of hearings is beclouded if the resulting decision is not promptly forthcoming.
1. Applicable Eegtjlations.
The Department of Health, Education and Welfare, designated by Congress to enforce the provisions of the Social Security Act, has promulgated a regulation which provides: “A State plan * * * must provide for a system of fair hearings under which * * (11) Prompt, definitive and final administrative action will be taken within 60 days from the date of the request for a fair hearing, except where the claimant requests a *1015 delay in the hearing (Code Fed. Beg., tit. 45, § 205.10, subd. [a].)
New York has substantially implemented this requirement with the following regulation in pertinent part quoted: “ [The fair hearing decision] shall be issued as promptly as feasible and within 60 days from the date the request for a fair hearing is received by the department. ” (18 NY CRB 358.18 [a].)
2. Mandatory Language.
There is not even a hint in the language of either Federal or State regulation that the 60-day time period is permissive, “ directory ”, or subject to enlargement because of administrative burdens. Neither one contains a proviso requiring the hearing determination to be within 60 days “if feasible”. The reference in the State regulation to “ as promptly as feasible and within 60 days” reasonably means the decision should be rendered as soon as possible, and, in any event, within 60 days as an outside perimeter.
Were the 60-day limitation meant to be subject to feasibility, the alternative connection “ or ” would-be employed. Use of the conjunctive “and” unequivocally means that decisions must be rendered both as soon as feasible and within 60 days.
While the word “shall ”, when found in a statute or regulation, is not always imperative (Munro v. State of New York, 223 N. Y. 208, 214), “in the absence of ameliorating or qualifying language or showing of another purpose, the word ‘ shall ’ is deemed to be mandatory ”. (Matter of Mulligan v. Murphy, 19 A D 2d 218, 223; People v. Ricken, 29 A D 2d 192, 193, affd. 27 N Y 2d 923.) The State Commissioner is not unfamiliar with terms such as “ may ” denoting discretionary duties, even with respect to State fair hearing responsibilities. (See, e.g., 18 NYCBR 358.21 [The State Commissioner’s fair hearing transmittal letter “ may contain a direction ” to apply the decision to other similar cases].) (Cf. 18 NYCBR 352.4 [a] [1].) Yet, here he chose to use the word “ shall ”, seemingly more imperative than the “ will ” stipulated in the Federal source counterpart.
The 60-day rule as contained in the Federal regulation is not advisory, but a mandatory procedural protection. (Jeffries v. Swank, 337 F. Supp. 1062,1066 [N.D. Ill., 1971].) This Federal regulation is binding upon all State operated, Federally reimbursed categories of assistance. (Social Services Law, § 358, subd. 1; Payne v. Sugarman, 39 A D 2d 720, affd. 31 N Y 2d 845; Matter of Ryan v. New York State Dept. of Social Serv., 40 A D 2d 867, supra; Matter of Groesbeck v. Lavine, 40 A D 2d *1016 917); and the New York State Legislature has expressly stated its intention' to meet and conform to all Federal requirements. (See L. 1970, ch. 517, § 1; Young v.'Shuart, 67 Mise 2d 689, affd. 39 A D 2d 724; see Lewis v. Martin, 397 U. S. 552; King v. Smith, 392 U. S. 309.)
3. No Reason foe Implying Peemissive Extension of 60-Day Rule by Vibtue of Ovebload.
Is an extension of time due to fair hearing workload implicit in the regulations ? The court believes not.
The very interest supposed to be protected by the longstanding 60-day rule, the right of aggrieved recipients to prompt resolution of their appeals, would be sacrificed and even nullified by any enlargement of that period inferred by administrative fiat. In human terms, the fact that benefits found in a fair hearing decision to have been improperly denied are restored retroactively to the initial date of denial does not change the situation. The 60-day rule stands “ as one of the safeguards of prompt administrative action ”. (HEW, Federal Handbook of Public Assistance Administration, Pt. IV, § 6400 [g].) The recipient, or applicant, who “ lacks independent resources * * * becomes immediately desperate ”. (Goldberg v. Kelly, 397 U. S. 254, 264 [1970].)
A Federal court in New York, in describing the harm caused to an eligible recipient who is denied aid during a fair hearing appeal as “ irreparable indeed ”, stated: “ For the children of persons eligible to receive AFDC grants, the period of time might well mean deprivation of basic human needs ”. (Almenares v. Wyman, 334 F. Supp. 512, 521, mod. 453 F. 2d 1075 [2d Cir., 1971], cert. den. 405 U. S. 944 [1972].)
The Federal and State authorities have recognized this very real aspect of the fair hearing process for families in receipt of assistance, threatened with termination or lowering of their current grants, by mandating that grant levels be maintained when a fair hearing is requested, until it is determined. (Code of Fed. Reg., tit. 45, § 205.10; 18 NYCRR 358.8 [c].) Interestingly, this recently promulgated requirement was made effective in February, 1972, after considerable litigation extending to the United States Supreme Court. (See Almenares v. Wyman, supra.) The resulting requirement of interim assistance, pending a fair hearing decision, provides a financial incentive for the State to expedite its fair hearings, and to eliminate delays. In the cases of currently eligible recipients in the Federal assistance categories, appealing discontinuances or decreases in aid, the grant cannot be stopped or lowered until the fair hearing is *1017 determined. Could it be that the State has, in fact, found the resources to render timely decisions in these types of hearings ? In any event, whatever time delay might be experienced in these cases does not leave appealing recipient in extremis since the predenial status quo is preserved.
The situation is different for families who are first applying for assistance. These are the people who are not currently receiving assistance. These are the people who are seeking to become recipients. There is no corresponding interim assistance requirement for them, however eligible in fact, nor for other recipients who contest denials of additional services or grants for claimed increased needs. The request of a fair hearing to contest their denied applications carries no automatic issuance ofassistance through the critical period of review.
However warranted the difference may be in sustaining recipients as opposed to applicants pending appeal of a denial, the very same concern is there for the needy applicant who is left to suffer deprivation while appealing an adverse determination, even if ulti mately successful. This interest is a vital one, necessitating pre cedural fairness and expediency. It militates strongly against “ loosening ” the 60-day rule.
In sum, the economic dependence of eligible applicants, the hardship of delay in final determination, and the clear statutory intent to provide meaningful access to administrative remedies require that 60 days mean that and no more. If the 60-day period prescribed by Federal regulation, and repeated in the New York regulation, is too burdensome for administration to accept, it is the regulation which must be changed. It is not for the State authorities to make their own unilateral modification through disregard in practice of the letter of the law.
The named petitioners have waited over 140 days for their dpcisions. Four other persons referred to in petitioners ’ papers have waited at least that long. The court believes that where the luman factor is so real and dependent upon the administrative process, the legally prescribed time limits for rendering decisions m grievances must be strictly adhered to and cannot be varied lecause of claimed bureaucratic backlog, despite the immediate absence of financial- expediency present in other circumstances.
The requirement is therefore binding and respondent has violated that requirement in each of petitioners’ cases. The Commissioner’s interpretation of his own mandatory regulation, articulated in this case, is unacceptably at variance with its plain meaning, the Federal regulations, and fundamental notions of fair procedure in the circumstances. (See Matter of Banks v. *1018 Wyman, 39 A D 2d 215, 221; cf. Matter of Howard v. Wyman, 28 N Y 2d 434.)
E. Conclusion.
Accordingly, the petition is granted and judgment shall be entered declaring that the respondent’s failure to render decisions within 60 days of petitioners’ request for a fair hearing violated subdivision (a) of section 358.18 of title 18 of the New York Codes, Rules and Regulations and section 205.10 (subd. [a], par. [11]) of title 45 of the Code of Federal Regulations, that this proceeding is properly brought as a class action on behalf of all recipients and applicants who, because of respondent’s policy of considering that 60-day period directory and not mandatory, are denied a timely determination of their fair hearing requests in violation of those prescribed regulations, and directing that respondent (a) shall abandon the policy of treating the 60-day rule as directory and not mandatory; and (b) shall render fair hearing decisions, after fair hearings, within the mandatory time period allowed.