Bertram Harnett, J.
A public school teacher who is .permitted a year’s leave of absence without pay may be concerned about *480 ■seniority rights during his absence. His concern may be shared by teachers staying on duty with expectations of moving up in employment entitlement. And, the school is often caught in between. So arises this case between Roger Dreyfuss, the stay-at-home French teacher, the Board of Education of Union Free School District No. 3, Town of Huntington, and Melvin Kerman, the French teacher who went abroad to teach for a year. The board gave Kerman seniority credit for his fateful year, enabling him to remain in a preferred status over Dreyfuss, whose full-time services were discontinued. Dreyfuss claimed he was entitled to the job, and a lawsuit was born.
A. FACTS AND PROCEDURES TO DATE
The background of this article 78 proceeding was set in our prior decision (Matter of Dreyfuss v. Board of Educ. of Union Free School Dist. No. 3, Town of Huntington, 72 Misc 2d 703) where we held Dreyfuss to be entitled to a job transfer with seniority protection when his old position was abolished. We went on to find Dreyfuss to have seniority rights over his colleague in the foreign language department, Kerman, not then a party to the proceeding. The board said Kerman had spent 1969-1970 on a fellowship in Greece. The Appellate Division, Second Department, upheld our finding of Mr. Dreyfuss’ entitlement to job transfer with seniority rights under section 2510 of the Education Law, but reversed and remanded on the sole ground that the absent Mr. Kerman was an indispensable party to the proceeding (Matter of Dreyfuss v. Board of Educ. of Union Free School Dist. No. 3, Town of Huntington, 42 A D 2d 845). Now that Mr. Kerman has been joined as a party, and his personal contentions advanced, we have a more complete (but unavailing to him) picture of his leave of absence.
The board raises defenses previously raised and rejected by this court, and, generally, we adhere to those initial findings for the reasons given in our cited memorandum decision. In recapitulation, our holdings were, and are, that (1) the board, while technically moving in limited scope to dismiss the petition for insufficient facts stated, has affirmatively stated rather comprehensively its version of the facts in an affidavit by its assistant superintendent and has then, in substance, answered and presented its defenses, including a thorough memorandum of law, which, along’ with Mr. Kerman \s answer, allows the court to proceed to a final determination (CPLR 103; CPLR 105; CPLR 3211, subd. [c]; Matter of Cisco v. Lavine, 72 Misc 2d 1009; cf. CPLR 7804, subd. [f]); (2) the prior arbitration deter *481 mination holding that this seniority dispute falls outside the ambit of the arbitration agreement, and the availability of review by the State Commission of Education under section 310 of the Education Law, do not .preclude judicial review of the over-all legal propriety of the board’s determination; (3) as a teacher whose previous position was abolished, Mr. Dreyfuss has transferral and seniority rights under section 2510 of the Education Law; and (4) seniority accrues from the first date of teaching service (the same day for both teachers, Sept. 1, 1967), not the prior date of receipt of letters from the school accepting them for their positions (see Matter of Lynch v. Nyquist, 41 A D 2d 363).
B. THE REMAINING DISPUTE: WHO HAS THE ‘ ‘ LEAST ’ ’ SENIORITY?
But, having said all this, .there is still the issue of whether Dreyfuss or Kerman has greater seniority, considering that both left the starting blocks at the same time for tenure and seniority obtainment. Dreyfuss worked five consecutive years in the foreign language department; Kerman worked two, then took his year’s leave of absence to teach in Greece, and then came back for two more. The board gave Kerman service credit for his year and proceeded to exercise its discretion to award Kerman the position both he and Dreyfuss were seeking. This being the only available full-time teaching slot in the foreign language department, we are confronted with a binary decision.
1. THE ONE WITH ‘ ‘ LEAST ’ ’ SENIORITY MUST GO
We look first to subdivision 2 of section 2510 of the Education Law, which provides: “ Whenever a board of education abolishes a position under this chapter, the services of the teacher having the least seniority in the system within the tenure of the position abolished shall be discontinued ” (emphasis supplied).
There is no dispute that Dreyfuss and Kerman are in the same tenure area; both are teachers in the foreign language department. Our inquiry is solely, who has ‘ ‘ the least seniority in the system? ”
2. SERVICE CREDIT FOR FOREIGN TEACHING LEAVE
Distilled further the issue becomes, does Kerman’s year leave of absence count as service ‘ ‘ in the system ’ ’ ?
We believe not. Our conclusion rests upon a finding that, under the Education Law, and even under the governing col *482 lective bargaining agreement, there is no authority to grant ■service credit under these circumstances.
(a) SECTION 3005 OF THE EDUCATION LAW SETS TERMS OF TEACHING
EXCHANGE LEAVE
The Legislature has considered leaves of absences from New York school systems, taken for the same reasons Kerman was away. Section 3005 of the Education Law provides, in pertinent part: “ The trustee, trustees or board of education of any school district may permit any teacher having at least five years service in the school or schools of said district to apply for and receive a one-year leave of absence for teaching in the ■schools of a foreign country * * * provided such foreign country * * * shall have agreed to furnish a teacher of corresponding rank or school level to fulfill the duties of the said teacher on leave of absence. During the period of said leave of absence the said teacher shall receive from the school district the same compensation that he would have received had he been present and teaching in a school of the district. Such leave of absence shall not in any way affect the retirement rights of said teacher as a member of a retirement system and the period of the aforesaid, leave of absence shall be credited to the total years of service of said member in the same manner and for all purposes as if he had not been granted said leave of absence and had been present within the district engaged in actual teaching service ” (emphasis supplied).
The statute gives discretion to school boards to grant teacher-exchange leaves of absence, with the .specified benefits of retirement protection, compensation, and service credit in the local school system, but only for teachers with “ at lease five years service in the school”. Kerman had only two. He was still allowed to go and was even accorded service credit for his year away. Yet, he was ineligible to receive the benefit of section 3005.
(b) DISCRETION OUTSIDE SECTION 3005 REQUIRES ADOPTED RULES
But, comes the retort, a local school district has discretion outside of section 3005 to give leaves of absence, and, here, a less munificent leave was, in fact, granted since no compensation was paid to Kerman. He was simply allowed to keep his place in line. We believe, however, that Kerman stepped out of the seniority line when he went abroad and there is no authority outside of complying with section 3005 for the board to have “ saved his place ” in line ahead of others faithfully performing their duties back home.
*483 Union free school districts are creatures of statute and are accorded only such powers in the State education system as are specified by law (Bassett v. Fish, 75 N. Y. 303, 311; Matter of Leone v. Hunter, 21 Misc 2d 750). Subdivision 16 of section 1709 of the Education Law is the only possible avenue of authority for granting leaves of absence falling outside section 3005. It allows the Board of Education .to: “ adopt rules and regulations governing the excusing of absences of all teachers and other employees and for the granting of leaves of absence to such employees either with or without pay ”.
Subdivision 1 of section 92 of the General Municipal Law has a similar provision authorizing a school district to grant, among other benefits, leaves of absence to its employees and to adopt rules in relation thereto.
These general provisions in the Education Law and General Municipal Law are the channeling authority for allowing absences not provided for elsewhere, such as the issuance of sabbatical leaves by union free school districts. Unlike city school districts that have a specific statutory power to allow sabbaticals (Education Law, § 6202, subd. 11, § 6306, subd. 3), union free school districts have no such specified authority, and must rely upon the general statutory provisions for ‘ leaves of absence ” (see Central School Dist. No. 2 of Town of Oyster Bay v. Cohen, 60 Misc 2d 337, 343; 25 Opns. St. Comp. 1969, p. 388).
But, the statutes are not self-executing. By their own terms, they must be activated by the appropriate adoption of rules and regulations.
No adopted school rules or regulations setting forth the terms and conditions of leaves of absence have been demonstrated here. Even assuming there may be authority outside of section 3005 for a board to grant a leave of absence with service credit but no pay in a nonqualifying teacher-exchange circumstance, the board has not followed the statutory prescription for implementing standards and procedures for such lesser leaves.
The requirement of uniform rules is far more than a minor procedural step; adoption of rules entails open public disclosure of the operative system and protects against arbitrary, undefined exercise of discretion, even unsavory favoritism, discrimination and unfairness (see 21 Opns. St. Comp., 1965, p. 560). The board’s conduct in granting or refusing leaves may then be reviewed in relation to its own rules, which can themselves be evaluated for fairness.
*484 We are concerned here with essential employment entitlements. Places in line of seniority preference are crucial elements of security and indeed indices of valuable service performed. The repeated cropping up of phrases in the Education Law like “ seniority in the system ” (Education Law, § 2510), and “ present within the district” (Education Law, § 3005), reflects an emphasis on at-home service for which alternatives or substitutes cannot be easily granted. Where service credit is concerned, it must be in strict compliance with statutory provision (see Matter of Valachovic v. Nyquist, 68 Misc 2d 33, 38; Matter of Murray, 6 Educ. Dept. Rep. 47). Basic fairness requires that boards not randomly grant leaves, with service credit, no matter what honor has been bestowed on a newly hired teacher. There is always residual concern of undue favoritism or discrimination, not to mention offense to the teacher staying on the job at home. Accordingly, such preferred leaves can be issued only pursuant to rules requiring evidence of dedication to the school system, such as a minimum local service period analogous to that contained in section 3005.
The board’s failure to adopt rules in this regard precludes reliance on any general school district discretion for leave allowance outside of section 3005 of the Education Law.
3. FOREIGN AND DOMESTIC EQUITIES
It may well be that the board validly allowed Kerman to leave for his year, and even to return to the district afterwards; but, once it purported to allocate seniority with unavoidable impact on other teachers, the matter expanded in consequence and fair considerations. The protection of others’ rights is secured by meeting the conditions of section 3005.
Whatever the dealings were between the board and Mr. Kerman prior to his going on leave is a matter between those two parties. In any event, they could not be found to have waived the rights of an absent, unrepresented, but involved party, Dreyfuss, who it cannot be presumed would have given up his place in line to the absent-then-returning Kerman. His rights and those of all other staying-on teachers were to be protected by compliance with the statute which here was totally ignored by the board.
The board seeks to make something of Dreyfuss’ acceptance of the ‘ ‘ four-tenths ’ ’ time teaching position it offered him after it abolished his position. Somehow, the board seeks to persuade us that this constituted a waiver of his right to assert entitlement to something better. But, considering Dreyfuss’ *485 sudden employment .jeopardy and his consistent efforts to regain full-time status, we cannot fault him for taking what he could get, presumably to sustain himself and his family, while still seeking his full legal entitlement.
We therefore adhere to our original holding that: “ Tenure and seniority are methods of recognizing the value of a teacher’s continuous employment services and of offering job security and rights in return for a teacher’s time and energy invested in a particular district * * * [Mr. Kerman] had no responsibilities to the school, it was not a sabbatical leave, and he was not paid. He was simply given time off with the presumable right to return” (Matter of Drey fuss v. Board of Educ. of Union Free School Dist. No. 3, Town of Huntington, 72 Misc 2d 703, 706, supra).
The legislative reward of section 3005 of the Education Law for long, dutiful service must not be undermined by school boards attempting to bestow equivalent benefits without requiring the statutorily prescribed local teaching service. Local authorities should not undercut the basic spirit and principle of the statutory five-year service requirement. Indeed, section 3005, in stating that a school district “may” grant such leaves with pay and service credit to certain teachers with specified demonstrated experience in the district, contains the implication that teachers without that period of service are not entitled to be awarded such beneficial leave.
Indeed, the only official board record of Mr. Kerman’s leave makes no mention of the granting of seniority accrual. The board minutes merely state that Kerman was going on leave and an exchange teacher was to be designated by the Fulbright Commission. No letter or other written communication indicated the board’s position regarding service credit. In fact, the board in this very proceeding does not submit or cite any prior official commitment by it on service credit; it merely contends that its subsequent granting of this credit was a proper act of discretion under the Education Law.
What, then, can be said for Mr. Kerman’s year in Greece when, we find, he did not continue to accrue " service in the district ”. It was no doubt a beneficial year spent, for him as well as the school upon his return with presumed greater language experience, better credentials and foreign exposure. And, the Fulbright Hays Act’s laudable purpose of bringing about international exchange and world teaching experience is designed to benefit all mankind and should be encouraged (see U. S. Code, tit. 20, § 1171 et seq.).
*486 The board’s action in permitting Kerman to go was a progressive step, even though the expected foreign exchange teacher never materialized in Huntington. However, in addition to contradicting the original explicit terms of Kerman’s leaving, this failure was a further shortcoming of the spirit if not the letter of section 3005’s contemplation of a concomitant foreign teaching benefit to the local district. Even aside from the ■seniority question, granting the leave was still a discretionary act in Mr. Kerman’s favor. No statute or contract provision required that Mr. Kerman be allowed to go at all with the security of retained employment. The entire project might have been reconsidered when the exchange teacher fell through (see Matter of Agresti v. Buscemi, 34 A D 2d 983, affd. 28 N Y 2d 984, 985).
In the final analysis, where the Fulbright program’s need for teachers clashes with local school employee rights as in the ordering of seniority preference, the Legislature in section 3005 has specified the terms and conditions for the resolution of those competing equitable considerations. And, the board and Mr. Kerman did not meet those conditions.
O. COLLECTIVE BARGAINING AGREEMENT
The collective bargaining agreement offers little solace to Mr. Kerman, at least in respect of this case. While a variety of leaves of absences are specifically allowed in article XVH, entitled, “ Extended Leaves of Absence ”, including in section E, ‘ ‘ Exchange Teacher ”, there is no mention anywhere of preserving seniority rights during ¡such leaves of absence. Tet, under article XVI for sabbatical leaves, conditioned upon a minimum óf seven or more years of consecutive service, the agreement states that no 11 emohunents of value ’ ’ are lost that accrue to other teachers not on leave. The omission of any guarantee of teacher-exchange leave .seniority rights, in view of the sabbatical leave specification, reflects a lack of any bargained-for rights other than those automatically conferred by law, viz., here, section 3005.
We therefore agree with the arbiter that the issue here is not resolved by the agreement, although it may imply by omission that seniority did not accompany teacher exchange leaves.
B. SECTION 3012 DOES NOT HELP KERMAN HERE
The board places considerable reliance upon its granting Kerman tenure in September, 1970 after three years of service, including the 1969-70 leave abroad without local service or pay. It claims subdivision 3 of .section 3012 of the Education *487 Law mandates the counting of that absent period towards tenure, in providing: “ Notwithstanding any other provision of this section [dealing with tenure in union free school districts] no period in any school year for which there is no required service and/or for which no compensation is provided shall in any event constitute a break or suspension of probationary period or continuity of tenure rights of any [teacher] ” (brackets supplied).
This statutory provision relates .to fragmented periods of time during or “ in any school year ’ ’ when teachers who are on staff for some reason are not required to teach, and are not paid. It covers a periodic interruption within the normal school year routine, as for the spring, summer, or winter vacation, or a suspension followed by reinstatement (see, e.g., Matter of Boyd v. Collins, 11 N Y 2d 228, 233). It applies only where there is an underlying service commitment from which a segment of time, and pay therefor are removed. Here, Kerman had no underlying obligation to teach in Huntington at any time during his year abroad.
Subdivision 3 of section 3012 of the Education Law, then, does not cover or authorize the individual granting of year-long leaves. Under the board’s interpretation, any time a teacher picks up and leaves for a year, without work obligation or pay, and is allowed to return, tenure credit must be given. No authority for that broad construction has been cited, and the court believes the statute, despite its ambiguous phrasing, was not intended to bring about the peculiar and drastic result of awarding tenure for lack of service and pay during an entire year. Moreover, the statute by its general terms does not supplant section 3005 of the Education Law, which specifically applies and establishes the prerequisites for granting foreign teacher exchange leaves with seniority credit. The board, in sum, has relied on a .statute that does not apply.
E. CONCLUSION
Therefore, Kerman was not entitled to service credit for the period of his study and teaching in G-reece (see Matter of Gimprich v. Board of Educ. of City of N. Y., 306 N. Y. 401). Lacking the 1969-70 year in his service arsenal, he had only four years’ credit when Mr. Dreyfuss’ position in the foreign language department was abolished. Mr. Dreyfuss had five years of service in the district. He was entitled under subdivision 2 of section 2510 of the Education Law to appointment to the full-time position given to Mr. Kerman, who had the “ least seniority in the system ” (see 11 Educ. Dept. Rep. 242).
*488 One concluding thought is in order for Mr. Kerman who lost his place in line alongside Mr. Dreyfuss. The discontinuance of his .services as the teacher with “ least ” seniority is mandated now because there are simply not enough full-time positions to go around. However supplanted, he is not totally out in the cold, since he inherits from Mr. Dreyfuss the preferred status for future appointment provided under subdivision 3 of section 2510 of the Education Law, should appropriate vacancies subsequently arise.
Accordingly, judgment is granted pursuant to article 78 of the CPLR, declaring the board’s determination to discontinue petitioner’s services on a full-time basis as arbitrary and unlawful, and annulling it, and directing the board to reinstate petitioner to a full-time position in the foreign language department, retroactive to September 1, 1972. The motion to dismiss by the board is denied.