OPINION OF THE COURT
Smith, J.
 Appellant contends that before finding that a juvenile has violated the conditions of an adjournment in contemplation of dismissal (ACD), procedural due process principles require Family Court to conduct a hearing, at which hearsay evidence may be considered only after a finding of good cause by the court to dispense with the confrontation of witnesses. Since neither the Family Court Act nor the requirements of procedural due process impose such restrictions upon the discretion of the Family Court to vacate an ACD order, we affirm the order of the Appellate Division. The inquiry conducted by the Family Court here in determining whether appellant violated the conditions of the ACD satisfied the requirements of due process and the presentment agency presented sufficient evidence of violations.
Respondent presentment agency filed two petitions, arising out of separate incidents, charging appellant, who was 13 years old at the time, with conduct which would have constituted crimes if committed by an adult. Based on appellant’s admissions, Family Court issued fact-finding orders that appellant’s acts would have constituted the crimes of possession of burglar’s tools under one petition, and criminal mischief in the fourth degree and possession of burglar’s tools under the second petition, if committed by an adult.
At the dispositional hearing, appellant, with the agreement of the presentment agency, sought an ACD for both petitions. Family Court granted appellant’s request and issued one ACD order, dated June 12, 1992, for both petitions. The ACD order specified three conditions. Appellant was required to (1) attend school while at Graham Windham, a residéntial facility; (2) continue residing at Graham Windham unless and until adopted; and (3) avoid further contact with court. Upon granting the ACD, Family Court spoke directly to appellant, stating,
"All right, Edwin, you understand that if within *598 six months you have no further contacts with the law and you are not re-arrested and you are not brought before the Family Court again that this matter, at the end of six months, will be dismissed and ultimately you will start with your record back again.”
In December 1992, the presentment agency filed a petition alleging that appellant had violated two conditions of the ACD and seeking to vacate the ACD order. The violation petition alleged that appellant had failed to comply with the conditions that he continue to reside at Graham Windham, and have no further contacts with court, by failing to abide by Graham Windham’s rules and regulations, and being arrested. An arrest report was attached to the petition.
The supporting deposition accompanying the violation petition was sworn to by the security manager at Graham Windham and stated,
"I observed [appellant] engage in the following activities:
"[Appellant] has been AWOL [absent without leave] from the facility on 8/31/92 and 11/13/92 [and] both times he was arrested.
"[Appellant] is disrespectful to the staff at Graham Windham.
"Beginning in July 1992 behavior in school deteriorated and cooperation with counseling dwindled.
"[Appellant] is beyond the control of the staff at Graham Windham [and] needs a more structured facility.”
On December 10, 1992, the parties appeared before Family Court on the violation petition. Appellant argued that the petition failed to allege a violation of the conditions of the ACD. Appellant also argued that he was entitled to a hearing, equivalent to hearings conducted for parole or conditional discharge violations, to determine whether appellant had violated the terms of the ACD order. The presentment agency appeared with a Graham Windham caseworker and stated readiness to elicit testimony from the caseworker regarding the allegations in the petition if necessary.
Family Court found the petition jurisdictionally sufficient and adjourned the proceedings to December 14,1992 for a hear *599 ing on whether the ACD order should be "revoked.” On December 14, a Graham Windham caseworker testified that since the issuance of the ACD order, appellant had gone AWOL from Graham Windham several times, been arrested on more than one occasion, and fought with other residents. The caseworker testified that she knew of appellant’s arrests by reviewing police reports and that she had not personally witnessed appellant go AWOL. She also testified that not all of the information regarding violations of Graham Windham rules were obtained by her from other sources. At times, the caseworker refreshed her recollection from papers in her possession.
Appellant moved to strike all of the caseworker’s testimony on the ground that it was based on hearsay. The motion was denied. Appellant’s motion to dismiss the violation petition was also denied. Family Court found that appellant had failed to abide by the rules and regulations of Graham Windham by going AWOL "numerous” times and fighting with other residents. The court also found that appellant had violated the condition that he have no further contact with court by being arrested twice since the ACD was granted. Family Court vacated the ACD order and restored the matter to the calendar. Appellant subsequently waived his right to the dispositional hearing and consented to placement with the Division for Youth for one year. The dispositional orders for both petitions were entered on January 8, 1993.
Appellant appealed the dispositional orders and the Appellate Division affirmed. The Appellate Division found that Family Court had not abused its discretion in vacating the ACD order. The Appellate Division also held that the hearing conducted by Family Court satisfied procedural due process requirements. Appellant appealed to this Court as of right on constitutional grounds.
Appellant argues that the ACD was equivalent to a dispositional order because the ACD was granted after fact-finding orders on the petitions were issued. Analogizing the ACD to parole and probation, appellant contends that he should have received the procedural protections accorded defendants and juveniles in parole revocation and probation violation hearings. Appellant contends that he was deprived of procedural due process because Family Court permitted hearsay testimony at the hearing on the violation petition without first finding good cause to dispense with the confrontation of witnesses. *600 Section 315.3 of the Family Court Act provides, in relevant part,
"1. Except where the petition alleges that the respondent has committed a designated felony act, the court may at any time prior to the entering of a finding under section 352.1 and with the consent of the respondent order that the proceeding be 'adjourned in contemplation of dismissal’. An adjournment in contemplation of dismissal is an adjournment of the proceeding, for a period not to exceed six months, with a view to ultimate dismissal of the petition in furtherance of justice. Upon issuing such an order, providing such terms and conditions as the court deems appropriate, the court must release the respondent.”
An ACD order may be issued on the ex parte motion of the presentment agency, sua sponte by the court, or on motion of the juvenile (Family Ct Act § 315.3 [3]).
In Mathews v Eldridge (424 US 319), the United States Supreme Court set forth a balancing test for determining whether a State has provided adequate due process protections in a particular case. The private interest at stake and the risk of an erroneous deprivation of that interest, or the value, if any, of additional or substitute safeguards, must be balanced against the State interest embodied in the challenged statute (id., at 335; see also, Curiale v Ardra Ins. Co., 88 NY2d 268).
Although an ACD resembles the dispositions of conditional discharge and probation (see, Family Ct Act § 352.2), because a juvenile’s continued freedom is contingent on the satisfaction of certain conditions, an ACD is not a disposition of a juvenile delinquency proceeding. Unlike dispositional orders, which may only be issued after the conclusion of a dispositional hearing and a finding that a juvenile requires "supervision, treatment or confinement” (Family Ct Act § 352.1), an ACD may only be granted to a person who has not been adjudicated a juvenile delinquent (see, Family Ct Act § 315.3 [providing that the court may order an ACD "at any time prior to the entering of a finding under section 352.1”]; § 352.1 [court may issue a finding that a person is a juvenile delinquent after the conclusion of the dispositional hearing]; § 352.2 [listing orders of disposition]).
The consequences of a dispositional order, even if the order imposes minimal restraints on the juvenile’s liberty (such as *601 conditional discharge or probation) differ significantly from the consequences resulting from an ACD order. Since dispositional orders follow upon the entry of a delinquency finding, the records of the juvenile delinquency proceedings are not sealed and the finding may constitute a predicate offense. In contrast, an ACD order, whether issued before or after fact finding, provides a juvenile with the opportunity to purge the record of any evidence of wrongdoing since an ACD will result in the dismissal of the petition (see, Family Ct Act § 375.1; Sobie, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 353.1, at 523-524). Even if violation of the ACD’s conditions may ultimately result in a dispositional order, the ACD order does not, ab initia, have the same effect.
Moreover, upon vacatur of an ACD order, Family Court must conduct a dispositional hearing, and any dispositional order which may result is subject to judicial review. In contrast, no new dispositional hearing is required upon a finding that a juvenile delinquent has violated the conditions of probation or a conditional discharge (see, Family Ct Act § 360.3 [6]). Given these material differences between ACD and dispositional orders, appellant’s contention that he is entitled to the same procedural protections afforded probationers and parolees is unpersuasive.
The dissent argues that the liberty interest of a juvenile who has received an ACD is "indistinguishable from the conditional liberty interest of a parolee or probationer.” (Dissenting opn, at 613.) However, this conclusion disregards the material differences between an ACD and a dispositional order. Even when an ACD is granted after fact finding, there is no correlative verdict of "guilt” which permits disposition, i.e., the juvenile has not been adjudicated a delinquent. Thus, Family Court’s "dispositional” discretion within the meaning of the Family Court Act is held in abeyance pending the ACD. If the ACD proceeds uneventfully, the court will not exercise its dispositional powers because the petition is dismissed.
Similarly, in the adult context, an ACD is neither an acquittal nor a conviction (Hollender v Trump Vil. Coop., 58 NY2d 420). Moreover, an ACD in adult criminal proceedings is unavailable once fact finding has occurred. An ACD may be granted only before the entry of a guilty plea or the commencement of trial (CPL 170.55 [1]). Thus, the ACD in juvenile delinquency proceedings affords the juvenile greater latitude in expunging any record of wrongdoing by effectively permitting *602 the parties to act as if fact finding had not occurred and that dismissal of the petition may ultimately be warranted.[1]
As a practical matter, the issuance of an ACD is a suspension of the proceedings. A vacatur of the ACD order merely brings the juvenile back to the same circumstances he would have faced after the conclusion of fact finding. The only loss the ACD juvenile has suffered, which other juveniles proceeding to disposition after adverse fact findings have not, is the possibility that the petition will be dismissed. Thus, contrary to the dissent’s assertion, the juvenile does not suffer a " 'grievous loss’ ” (see, dissenting opn, at 615). Like other juveniles, the juvenile whose ACD has been vacated is entitled to a dispositional hearing with its attendant procedural protections.
Appellant’s circumstances are more analogous to those encountered by the defendants in People v Outley (80 NY2d 702), where we considered the level of due process protection required for defendants who were accused of violating a condition of their plea agreements. Outley involved three unrelated cases where the trial courts, in accepting defendants’ guilty pleas, agreed to impose certain sentences on condition that the defendants not be arrested during release while awaiting sentencing. The defendants were arrested prior to their sentencing dates and, in each case, the trial court imposed a greater sentence than conditionally agreed to at the plea proceeding.
The defendants in Outley argued that due process principles required that trial courts conduct an evidentiary hearing and establish, by a preponderance of the evidence, that defendants had committed the crimes for which they were arrested before the no arrest condition could be deemed breached. We rejected this contention and held that although the mere fact of arrest would not be sufficient to establish a violation of the conditional sentencing agreement, where an issue concerning the validity of the postplea charge exists, or where a defendant denies involvement in the underlying crime, any inquiry which satisfies the court that a legitimate basis for the arrest exists provides sufficient due process.
Like the defendants in Outley who admitted the factual predicates for their crimes, the appellant here admitted the factual allegations of the petitions. Moreover, like the *603 defendants in Outley, the expected resolution of appellant’s case was contingent upon the satisfaction of certain conditions known to appellant.
We hold that the requirements of procedural due process are satisfied when a Family Court determines, after conducting an inquiry into the allegations of the violation petition, and providing the juvenile with the opportunity to respond to those allegations, that there is a legitimate basis for concluding that a juvenile has violated a condition of an ACD order and states the reasons, on the record, for reaching that determination. The form and extent of the inquiry necessary to determine the existence of a legitimate basis for vacating an ACD order will vary according to the particular circumstances of each case, and lie within the discretion of the Family Court. However, a more detailed inquiry will be required where a juvenile denies the factual basis of an alleged violation than in cases where such issues have not been raised. Here, there was a hearing with an opportunity for cross-examination.
The legitimate basis test preserves the wide discretion accorded Family Court by the Family Court Act to fashion appropriate relief in the context of juvenile delinquency proceedings, while satisfying the principles of due process enunciated in Eldridge. The consequences attendant upon the vacatur of an ACD order are the commencement of a dispositional hearing and the entry of a dispositional order. Since it is likely that a juvenile will receive a disposition more restrictive than the terms of an ACD, appellant has an attenuated liberty interest in the least restrictive dispositional order available under the Family Court Act — a conditional discharge (where the ACD does not contemplate supervision by the Department of Probation) or probation (see, Family Ct Act § 352.2 [1]). The interest is attenuated because at the conclusion of fact finding, a juvenile does not possess a vested liberty interest in an ACD, and the dispositional hearing provides sufficient due process for a dispositional order.
Furthermore, the risk of an erroneous deprivation of the juvenile’s attenuated liberty interest is low. Family Court must be satisfied that there is a legitimate basis for concluding that a juvenile has violated the conditions of an ACD, and the juvenile is provided with the opportunity to respond to the allegations. The next step, disposition, may not occur without a dispositional hearing, and any dispositional order which issues is subject to judicial review. Thus, the juvenile has two opportunities to protect the limited liberty interest at stake, once *604 during Family Court’s inquiry into the existence of an ACD condition violation, and a second time at the dispositional hearing.
As noted previously, Family Court may grant an ACD on its own motion, or on the ex parte motion of the presentment agency or the juvenile, without a dispositional hearing. Moreover, we do not question the Family Court’s discretion to hold a hearing in an appropriate case before an ACD may be vacated and the case restored to the calendar. The difference between the majority and the dissent is (1) whether a hearing is required in every instance before an ACD order is vacated and (2) whether a good cause finding is necessary before admitting hearsay evidence at such a hearing. Requiring a constitutionally mandated good cause finding introduces unnecessary complexity into the process of granting and vacating ACD orders. Grafting additional and unnecessary requirements onto the ACD process will only decrease incentives to utilize this method of resolving delinquency petitions to the detriment of all parties, including the juvenile. Finally, the State interest in speedily vacating an ACD order once a juvenile has violated the conditions of the ACD is high, given the legislative mandate that there be a swift determination of charges brought against juveniles (see, Matter of Willie E., 88 NY2d 205).
The dissent’s reliance on Morrissey v Brewer (408 US 471) is misplaced. The defendants in Morrissey were convicted and served a portion of their sentences before being released on parole. Thus, unlike the appellant, who had not been adjudicated a delinquent and whose interest in dismissal of the petition evaporated upon vacatur of the ACD order, the Morrissey defendants had been sentenced, deprived of their liberty, then conditionally released. Because the Morrissey defendants had been incarcerated, revocation of parole had the consequence of returning them to imprisonment. Here, vacatur of the ACD entitled appellant to a dispositional hearing before he could be found delinquent and "sentenced.” Consequently, the liberty interests of a juvenile who faces vacatur of an ACD is not analogous to the conditional liberty interest of a parolee.
Moreover, the parole of the Morrissey defendants was revoked upon written reports by parole officers to the Iowa Parole Board, an administrative agency. The Supreme Court held that under these circumstances minimum requirements of due process required that a parolee be provided with,
*605 "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached’ hearing body * * *; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole” (Morrissey, at 489).
The legitimate basis test provides many of the procedural protections enumerated by the Morrissey Court, and adequately protects the attenuated liberty interest of juveniles who have been granted ACDs.
A juvenile receives notice of an alleged violation of an ACD condition by a violation petition which must be verified and contains the factual basis for the allegations in the petition. In conducting the inquiry into the existence of a legitimate basis for vacating the ACD order, Family Court must provide the juvenile with an opportunity to respond to the allegations in the petition. Family Court, a judicial body, is the "neutral and detached” party which will determine whether an ACD order should be vacated and is required to state the basis for its decision on the record. Moreover, the Morrissey Court explicitly permitted consideration of hearsay evidence, including "letters, affidavits, and other material that would not be admissible in an adversary trial” (id.) in the parole revocation decision. Similarly, Family Court should be permitted to consider hearsay evidence in determining whether an ACD condition has been violated.
Applying the legitimate basis test to the circumstances of this case, we conclude that Family Court’s vacatur of appellant’s ACD order was proper. Although a hearing is not required in every case, Family Court held a hearing here to determine if there was a basis for vacating its ACD order. Appellant received the opportunity to contest the allegations of the violation petition at the hearing and cross-examined the only witness who testified, a caseworker at Graham Windham who was familiar with appellant’s case.
*606 Based on her own knowledge and on information obtained from documents which she had reviewed,[2] the caseworker testified that appellant had been arrested, gone AWOL from the facility and fought with other residents. The record reflects that appellant did not deny the basis or the occurrence of any incidents alleged in the petition even though provided with that opportunity at the hearing. Consequently, there is no contrary evidence in the record refuting the testimony of the caseworker or the arrest report attached to the violation petition. Under these circumstances, the quantum of evidence was sufficient to establish the violations.
Instead of denying the allegations of the violation petition, appellant argued that the incidents did not violate the conditions stated in the ACD order because an arrest did not constitute contact with court, and appellant continued to reside at Graham Windham until the facility determined that appellant could no longer stay there. Neither contention has merit.
Family Court specifically informed appellant at the time that the ACD was granted that the petitions would be dismissed if "within six months you have no further contacts with the law and you are not re-arrested and you are not brought before the Family Court again.” Under these circumstances, appellant’s arrests constituted a violation of the ACD order. Since appellant did not deny the factual circumstances of his arrests, no issue as to the propriety of the arrests was raised and the arrest report attached to the petition and the testimony of the caseworker were sufficient to establish this violation.
The condition that appellant continue residing at Graham Windham contains an implicit requirement that appellant follow the rules and regulations of the facility. Thus, the evidence presented by the presentment agency that appellant had gone AWOL and fought with residents was sufficient to establish additional violations of the ACD order. Appellant cannot complain of being involuntarily ejected from Graham Windham when his own conduct rendered continued residence at Graham Windham inappropriate.
Accordingly, the order of the Appellate Division should be affirmed, without costs.

. Thus, the juvenile receives another opportunity for a clean start despite the existence of a finding that the juvenile has committed acts which, if committed by an adult, would have constituted a crime.

. These records should have been introduced into the record of the proceedings.