OPINION OF THE COURT
Charles F. Graney, J.
At least 67 children died in New York State in 1994 as a result of child abuse or neglect according to the Statewide Central Register of Child Abuse and Maltreatment (hereinafter the SCR). We will never know how many of those children had been objects of prior unfounded child abuse or neglect reports. Because of the recent passage of Elisa’s Law Child Protective Services Reform Act of 1996 (L 1996, ch 12, hereinafter referred to as Elisa’s Law), we will in the future be able to tell if a deceased child had been the object of a prior unfounded report. Elisa’s Law does not, however, benefit abused or neglected children who are objects of investigated reports that are erroneously unfounded.
The petitioner herein is a boy who was 10 years old in February of 1994 when he was allegedly abused by his father. At the time the child was living with his mother who was separated from his father. The local police were notified and apparently reported the matter to the SCR. The SCR accepted the report and referred it to the local child protection service which investigated the incident. The investigation resulted in a determination of "unfounded”. "Unfounded” means that the investigation did not find some credible evidence of the alleged abuse or maltreatment (see, 18 NYCRR 432.1 [f]).
The local district notified the SCR of its determination pursuant to respondent’s regulations (see, 18 NYCRR 432.3 [k]). The SCR then informed the father who was the subject of the investigation and the mother who apparently was an "other person! ] named in the report” (see, 18 NYCRR 432.9 [b]). No one else was notified and all records of the report and investigation were eventually expunged. These actions were consistent with, in fact mandated by, the statute and regulations that were then in effect (see, Social Services Law § 422; 18 NYCRR *621 432.9). The statutory scheme has in some respects, not relevant to the instant case, been changed by the passage of Elisa’s Law.
As a result of the alleged incident, the mother filed a family offense petition against the father alleging he had committed a family offense against the child. A Law Guardian was appointed to represent the child in that proceeding. While representing the child in the family offense proceeding, the Law Guardian learned that the investigation of the child abuse report had resulted in an unfounded determination. She then wrote the Buffalo regional office of the New York State Department of Social Services and requested an administrative review of the unfounded determination made by the local district.
When that review finally resulted in no change in the determination, the instant proceeding was filed on behalf of the child pursuant to CPLR article 78. The petitioner contends that the statutory / regulatory scheme does not provide due process for him and that the particular review conducted in this case did not provide him with due process. The court directed a hearing on these issues.
The petition asks the court to declare the applicable statutory / regulatory provisions to be unconstitutional to the extent they deny children due process rights by not providing meaningful review. The court has previously ruled, by decision herein dated May 13, 1996, that a reported child victim, whose alleged abuse and neglect has been referred for investigation by the SCR to the local child protection service, has due process rights in relation to the implementation of the child protection laws of this State. Respondent argues that this court has no authority to issue a declaratory judgment since this is an article 78 proceeding. The court rejects this argument.
First, the petition specifically requests, among other relief, that the court enter a judgment "declaring that the administrative review provided to the Petitioner * * * was constitutionally deficient”. Moreover, at least as early as this court’s May 13, 1996 memorandum of decision, respondent has been on notice that the petitioner seeks broader relief than simply overturning respondent’s decision in his case. Petitioner seeks not merely a declaration that respondent violated his due process rights during the review of the local district’s determination, but relief from that determination, at least to the extent of a due process review. This court must, therefore, declare the parties’ rights (see, Matter of Allen v Coombe, 225 AD2d 1084 [4th Dept 1996]).
In Allen (supra), an inmate brought an article 78 petition alleging that a correctional facility improperly restricted his *622 right to practice his religion. The lower court denied the petition. On appeal, the Fourth Department, referring to the matter as a declaratory judgment motion, modified the lower court’s order after it determined that the lower court should have declared the parties’ rights even though the petition therein was brought pursuant to article 78. As in Allen, this court may declare the parties’ rights even though the proceeding was commenced pursuant to article 78 (see generally, Matter of Cisco v Lavine, 72 Misc 2d 1009 [Sup Ct, Nassau County 1973]; CPLR 3001; 43 NY Jur 2d, Declaratory Judgments and Agreed Case, § 1).
The Court of Appeals in Matter of Edwin L. (88 NY2d 593 [1996]) applied a balancing test for determining whether a State has provided adequate due process protections in a particular case such as was set forth by the United States Supreme Court in Mathews v Eldridge (424 US 319 [1976]). That Court stated: " '[D]ue process is flexible and calls for such procedural protections as the particular situation demands’ [citations omitted]. Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected [citations omitted]. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail [citations omitted]” (supra, at 334-335).
A lengthy dissertation is not necessary in order to highlight the private interest of the child that will be affected. In passing Elisa’s Law, the New York State Legislature issued a statement of legislative intent which reads: "The legislature finds that the deaths of children due to abuse, neglect and maltreatment despite the involvement of government agencies charged with protecting these children is intolerable and unacceptable, and finds equally unacceptable laws which bar legitimate and appropriate inquiries about the activities of such agencies in these cases” (L 1966, ch 12, § 1).
The statement of legislative intent is phrased in terms of the interest of the public and public agencies in seeing that chil *623 dren are adequately protected. The instant case involves the interest of children themselves to be protected from abuse and neglect by their parents and others responsible for their care. This private interest was recognized by New York State in the passage of chapter 1039 of the Laws of 1973. That legislation created the SCR (Social Services Law § 422) and established a procedure for reporting and investigating incidents of suspected child abuse and neglect. The legislation’s findings and purpose clause (Social Services Law § 411, as added by L 1973, ch 1039, § 1) states: "Abused and maltreated children in this state are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment. It is the purpose of this title to encourage more complete reporting of suspected child abuse and maltreatment and to establish in each county of the state a child protective service capable of investigating such reports swiftly and competently and capable of providing protection for the child or children from further abuse or maltreatment and rehabilitative services for the child or children and parents involved.”
Do the procedures challenged in this case create a risk of erroneous deprivation of this interest? The answer is clearly affirmative.
The evidence indicates that in 1995 72.8% of all reports, approximately 94,000, referred by the SCR to local child protective services for investigation resulted in unfounded determinations. In that year 128,896 cases of reported child abuse and neglect were referred for investigation. These cases involved 211,445 different children. In the first six years of this decade there have been over a half million unfounded investigations involving nearly one million children.[1]
Were any of the hundreds of thousands of unfounded determinations wrong? No one knows. How are complaints about unfounded designations to be handled? No one knows.
Six witnesses who had worked in the system for a number of years at the local, regional or State level testified in the instant case. None of them were familiar with a complaint about an *624 unfounded report ever having been made on behalf of a child. The instant case appears to be one of first impression in this State both legally and administratively.
Does it matter that there have been no challenges to unfounded determinations which in the last 10 years have approached one million in New York State? Maybe not. One of respondent’s witnesses, the Regional Director of the respondent’s Buffalo region, testified that she could not imagine that a local district would erroneously unfound a case and further testified she did not know of anyone who would have a concern about an unfounded case.
To understand whether such testimony represents bureaucratic hubris or stonewalling in the instant case, or whether it reflects an institutionalized mind-set, reference to the relevant statutes and departmental regulations is instructive. The statutory /regulatory scheme prescribes a procedure to notify an alleged perpetrator of an indicated determination, together with notification of his or her right to seek review of the determination and the method to do so, including the right to an administrative evidentiary hearing. The witnesses were very aware of this procedure which results in requests for review by alleged perpetrators in 40 to 50% of the cases.
There are no provisions for notifying the child or anyone on the child’s behalf when a report is unfounded and no procedure established to request or conduct a review. Possibly, then, it is because of the statutory scheme, which treats the child as a nonentity, that the concept of reviewing an unfounded report seemed to be a difficult one for respondent’s witnesses. Indeed, respondent initially moved to dismiss this petition on the ground that the child had no standing to challenge the determination of the local district denying him protective services.
The Regulations of the Department of Social Services require the local district to notify the SCR upon making an unfounded determination (see, 18 NYCRR 432.9). The SCR then notifies the subject and other persons named in the report, except children under the age of 18 years, that the report was unfounded. The regulation also provides that the SCR may review any unfounded determinations made by a local district and affirm or not affirm the determination.
There is nothing in the statute or regulations that provides for notice of an unfounded determination to a reported child victim who is a minor (the usual case), to anyone on that child’s behalf or to the original reporter (unless the reporter is a mandated reporter who requests notification [see, 18 NYCRR *625 432.12]). Nor is there any provision in the statute or regulations for the child or anyone on the child’s behalf to object to or ask for a review of an unfounded determination. This differs quite dramatically from the statutory provisions permitting the subject of the report, i.e., the alleged perpetrator, to challenge an "indicated” determination and seek expungement of the records (see, Social Services Law § 422 [8]; 18 NYCRR 432.3 [k]; part 434). Further, there is no internal review or oversight as is discussed hereinbelow. Without any safeguards, the risk of erroneous deprivation of the child’s right to protection is obvious.
Can this risk be ameliorated by additional or substitute procedural safeguards? Again the answer is clearly affirmative. In a system where massive numbers of initially accepted child abuse and neglect reports are unfounded by overworked[2] and inadequately trained[3] caseworkers at the local level functioning without any review or oversight, thereby dehying protective services to the children involved, the probable value of some procedural safeguards is obvious. If an unfounded determination is found to be erroneous upon review, protective services are likely to be provided.
In determining the issue of what process is due, that is, what procedural safeguards are required, the child’s private interest must be balanced against the governmental interest involved. The only governmental interest identified by the respondent was the cost issue. Respondent presented testimony in support of its argument that it would be prohibitively expensive to provide review and hearing rights, similar to those of alleged perpetrators, to reported child abuse and neglect victims whose cases have been unfounded. (The respondent did not offer testimony as to the possible additional expense for protective services that would have to be provided if unfounded determinations were changed upon review, possibly not wanting to concede that any unfounded determinations would be changed. The petitioner did not offer testimony about the long-range negative financial impact upon the State if child victims of abuse and neglect are not adequately protected.)
The SCR’s Program Manager testified that, since there are approximately three times as many unfounded cases as indicated ones, granting review rights to alleged child victims *626 might cost approximately three times as much as providing review rights to alleged perpetrators, without taking into account the additional expense of providing a representative for the child. The court would not anticipate as high a challenge rate as is experienced with indicated cases. The evidence in this case did not establish that the governmental interest, that is, the expense of providing additional procedures, such as discussed hereinbelow, would outweigh the private interest of reportedly abused or neglected children.
Since there are no provisions in the statutory /regulatory scheme for the child to obtain a review of an unfounded determination or even receive notification thereof, the law in this State does not provide due process for a reported child victim to challenge the unfounding of a child abuse or neglect report.
The process due reported child victims in cases where the reports are unfounded includes prompt notice to the child and to the child’s parents or custodian or guardian if other than the parents (see, Fuentes v Shevin, 407 US 67 [1972]; Armstrong v Manzo, 380 US 545 [1965]).[4] Testimony in this case has established that a parent or someone aligned with the parent is usually the alleged perpetrator, therefore notice would have to be given to some independent third person designated by law to act in the child’s behalf, which representative would have the right to review the file which resulted in the unfounded determination. This requirement could be met by use of an ombudsman. This approach is utilized in other States and in other areas of the law in this State (see, Executive Law § 544-a; Mental Hygiene Law § 13.34; Workers’ Compensation Law § 13-h).
Due process further requires a review procedure should the child’s representative wish to request a review. The procedure would have to provide the opportunity to be heard in person and to present evidence to a neutral hearing body or officer with a written statement of determination to be provided in a timely manner by the hearing body or officer indicating the basis of the decision rendered (see, Morrissey v Brewer, 408 US 471 [1972]). There is no reason alleged victims of child abuse should not have rights similar to those accorded alleged perpetrators of child abuse or alleged parole violators.
Because of the unusual circumstances of this case the alleged child victim learned of the unfounding and had an *627 advocate available to register a complaint concerning the determination. Despite the fact there was no requirement of review, the petitioner’s complaint resulted in the local district’s unfounded determination being reviewed by respondent’s Buffalo regional office. Respondent argues that this review satisfied any due process requirement in this case.
The initial request for review was made by the Law Guardian to the regional office by letter dated May 3, 1994. A fair interpretation of the testimony is that the regional office did not know what to do with the complaint. They were not aware of any similar complaint ever having been made. There were no departmental regulations to guide them in responding. The request was eventually reviewed, but not until the Law Guardian had made numerous phone calls and sent a follow-up letter dated July 15,1994 to the Commissioner of the New York State Social Services Department requesting information pursuant to the Freedom of Information Act. The regional office’s review commenced sometime after that. There was no explanation for the delay although the original request had indicated the Law Guardian’s belief that there was a great potential for harm to the child.
The Child Abuse Specialist in the Buffalo regional office testified that there never had been a complaint about an unfounded determination that she was aware of but that she reviewed the case record the same way she did when a complaint was made in an indicated case. However, her failure to recommend a change of the determination was not subject to a hearing as is provided for in indicated cases. Instead, the regional office immediately took steps to see that the record was expunged, in compliance with the statute, even though it was aware that the determination was being questioned.
Although this was a unique case and the instant legal proceedings were commenced approximately four months after her review, the Child Abuse Specialist could riot remember anything about the contents of the file she reviewed and was unclear about whom she had talked to. The court finds that the Child Abuse Specialist did review the file which apparently still contained the complete case record. She did not, however, speak to the caseworker about the case. She may have spoken to the supervisor of the local district’s child protective unit about the case. She did not speak about the merits of the case with the Law Guardian, or with the child, or with the child’s mother, or with the person originally reporting the incident to the SCR. She did not seek to verify any of the information in *628 the file nor seek to verify any of the issues raised in the Law Guardian’s letters. She did not discuss with the Law Guardian why the Law Guardian felt the unfounded determination was improper or offer her an opportunity to be heard.
This was a "paper” review limited to a review of the contents of the file, verifying whether departmental regulations had been complied with. The court rejects respondent’s argument that the review sufficed to accord the child due process in the instant case.
In its final argument respondent suggests, referring to Elisa’s Law, that "It makes no sense for the Court to make pronouncements intended to have precedental effect where the law has changed since the events being considered”. This argument reflects a misunderstanding both of Elisa’s Law and what the instant case is about. There is nothing in Elisa’s Law which provides notification to a reported child abuse victim when the report is unfounded, or provides a review procedure or requires any oversight within the child protection system in such cases.[5]
The instant case is not about expungement or confidentiality. While Elisa’s Law now seals and preserves the records of unfounded reports, they would not be available for review in a case such as this. Reported child victims or persons acting on their behalf are not included in the list of persons and agencies which may have access to the sealed records of unfounded reports. Even those agencies granted access, including respondent itself, may only utilize the sealed records when involved in investigating subsequent reports and not, for example, for internal review or oversight (see, Social Services Law § 422 [5]; 18 NYCRR 432.2 [f] [3] [xxviii]). This limitation has been criticized by the New York State Commission on Child Abuse.
It should also be noted that the child protection laws do not provide as much protection for victims of child abuse and neglect as is provided for adult victims of intrafamilial domestic abuse although this seems counterintuitive (see, Family Ct Act art 8). It is unclear to this court what policy reasons support a statutory scheme which permits an alleged child victim of intrafamilial abuse to be peremptorily denied access to the protection of the law at two "gatekeeping” stages whereas an adult victim can seek protection unimpeded by any threshold requirements. The report of the New York State Commission *629 on Child Abuse indicates that in 1995 55% of child abuse and neglect reports to the SCR were not registered (accepted) and that 72.8% of those accepted were unfounded. Therefore, only 12.5% of reported cases became eligible for protective services.
Without question humanitarian considerations as well as concern for the public weal require the government to provide a system for protecting victims of child abuse and neglect. New York State has promulgated statutes and regulations intended to do so. The evidence presented in this case indicates the State created a system where nearly three quarters of accepted reported cases are unfounded, thus resulting in no protective services. The number of children in this category in this decade approaches one million. Yet there is no provision for review on behalf of the investigated child victim and there apparently has never been a request for such a review prior to the instant case.
The due process deficiencies of the present statutory/ regulatory scheme would pose less of a potential threat to the children affected if the entity charged with the obligation of protecting children, the respondent herein, or some third party, provided effective monitoring or oversight to assure that local child protective services are performing adequately when reported cases are unfounded. The evidence in the instant case, however, clearly shows that there is no regular monitoring, that what monitoring is done is infrequent and minuscule and that there are no established procedures or protocol for assessing the validity of unfounded cases. Although the SCR may review unfounded determinations of the local district (see, 18 NYCRR 432.9 [d]), the Program Manager of the SCR testified he was not aware of any such reviews ever having been accomplished. The Commission of Investigation report states that its legal research located only one reported case since the creation of the SCR in which the respondent rejected a local district’s determination to unfound a case.
There are no facts in dispute in this case. The issues raised do not concern the appropriateness of the local district’s determination nor do they have anything to do with expungement. The evidence relied on by this court in reaching its decision was all provided by the respondent, the New York State Department of Social Services.
The issue is that in this State massive numbers of reported child abuse and neglect cases which have been accepted for investigation are determined to be unfounded with no avenue for review by the affected child and no effective oversight by *630 the respondent or anyone else. The court feels compelled to call this situation to the attention of the New York State Legislature for remediation. The court is concerned that the much publicized passage of Elisa’s Law, beneficial as it may have been, has been accepted as a major remediation of deficiencies in New York State’s child protective scheme. Clearly it was not. Further, neither the New York State Commission on Child Abuse in its November 1996 report nor the State of New York Commission of Investigation in its January 1996 report addressed the issues raised by the evidence in this case.
It is the conclusion of the court that the petitioner herein was not afforded due process to enforce his rights to be protected. Respondent is directed to provide an administrative hearing for petitioner in the same manner as accorded an appellant pursuant to its regulations (see, 18 NYCRR part 434). That portion of the petition alleging that respondent’s determination on review was arbitrary and capricious is dismissed as moot.

. The Program Manager of the SCR testified that roughly 50% of reports made to the SCR are not registered and referred for investigation and in making the determination whether or not to refer, "we err on the side of the child and accept it”. Several witnesses before the State of New York Commission of Investigation did not share this perception (see, Secrets That Can Kill: Child Abuse Investigations in New York State, Report of Temp Commn of Investigation of State of NY), nor did witnesses before the New York State Commission on Child Abuse (see, Report of NY State Commn on Child Abuse).

. See, Report of NY State Commn on Child Abuse, at 18 (Nov. 1996).

. See, Report of Temp Commn of Investigation of State of NY, at 148 (Jan. 1996).

. Such notification is presently required when the unfounded report concerns a child who is in residential care (see, 18 NYCRR 433.3 [a] [6]).

. Elisa’s Law does provide for third-party oversight in certain types of cases in which local districts do provide services to children (see, L 1996, ch 12, §§ 4-6).